OPINIONS OF THE SUPREME COURT OF OHIO
        The full texts of the opinions of the Supreme Court of Ohio are
being transmitted electronically beginning May 27, 1992, pursuant to
a pilot project implemented by Chief Justice Thomas J. Moyer.
        Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S. Kobalka,
Reporter, or Deborah J. Barrett, Administrative Assistant.  Tel.:
(614) 466-4961; in Ohio 1-800-826-9010.  Your comments on this pilot
project are also welcome.
        NOTE:  Corrections may be made by the Supreme Court to the full
texts of the opinions after they have been released electronically
to the public.  The reader is therefore advised to check the bound
volumes of Ohio St.3d published by West Publishing Company for the
final versions of these opinions.  The advance sheets to Ohio St.3d
will also contain the volume and page numbers where the opinions
will be found in the bound volumes of the Ohio Official Reports.


Dumas, Appellee, v. Estate of Dumas et al., Appellants.
        [Cite as Dumas v. Estate of Dumas (1994),        Ohio St.3d
.]
Trusts -- Valid, nontestamentary trust executed by settlor and in
        existence at time of settlor's death bars spouse from claiming
        a distributive share in the trust assets under the statutes of
        descent and distribution.
A valid, nontestamentary trust executed by a settlor and in existence
        at the time of his or her death bars the settlor's spouse from
        claiming a distributive share in the trust assets under the
        statutes of descent and distribution, even though the settlor
        is the trustee, derives all income from the trust, and reserves
        the rights to revoke or amend the trust and to withdraw and
        deposit assets.
        (No. 92-2226 -- Submitted November 10, 1993 -- Decided March 9,
1994.)
        Appeal from the Court of Appeals for Franklin County, No.
92AP-278.
        This case involves the transfer of assets by George Dumas to an
inter vivos trust and a suit by his wife, appellee, alleging that
the transfer of those assets constituted a fraudulent transfer and
that her late husband intended to
defraud her by depriving her of her elective share of his
probate estate.
        George and Vanya Dumas, each of whom already had children, were
married in 1962.  They remained married until Mr. Dumas's death in
1988, and no children were born of their marriage.  During their
marriage Mr. and Mrs. Dumas ran two businesses, one called Sterling
Jewelry, the other called Globe Import & Export ("Globe").  Sterling
Jewelry ceased operation around 1978, and in 1978 Mr. and Mrs. Dumas
began operating Globe, which they operated together until around
1987.
        Because of the litigious nature of those businesses, Mr. Dumas
proposed that Mrs. Dumas establish her own trust to hold her
separate assets for the exclusive benefit of herself and her
daughter, Nadia Budimir.  Mrs. Dumas established such a trust in
1985, transferring assets worth approximately $360,000 to the trust.
        In 1986, Mr. Dumas established a trust for the exclusive
benefit of himself and his daughters.  He funded the trust with
Globe stock and named himself as the original trustee.  Mr. Dumas

derived all the income from the trust during his lifetime.  He also reserved the right to revoke the trust agreement, to amend the agreement, to withdraw assets from the trust, and to deposit additional assets to the trust, including the right to deposit additional assets by his last will and testament.  The trust provided that, upon the death of Mr. Dumas, the trust assets would be divided into two separate shares for his two daughters, Rosemarie Hinnebusch and Geraldine Dumas.  The trust did not name Mrs. Dumas as a beneficiary.

Mrs. Dumas left her husband around September 1987, and on September 8, 1988, she filed a complaint for divorce in the division of domestic relations of the court of common pleas.  In addition to seeking a divorce decree, alimony, and a division of property, Mrs. Dumas sought to rescind the transfer of assets to the trust established by Mr. Dumas or, alternatively, compensatory damages of $350,000 and punitive damages of $500,000 on the theories that Mr. Dumas intended to defraud Mrs. Dumas and that the transfers constituted a fraudulent conveyance.

Mr. Dumas died nine days later on September 17, 1988.  Nazar Kasparian and BancOhio National Bank ("BancOhio"), appellants, were appointed co-executors of Mr. Dumas's estate.

On February 21, 1989, BancOhio, successor trustee of the trust established by Mr. Dumas, filed with the division of domestic relations a motion to dismiss Mrs. Dumas's complaint on the ground that the action for divorce had been rendered moot by Mr. Dumas's death and that the other claims failed to state a claim upon which relief could be granted.  Mrs. Dumas responded on March 10, 1989 by filing a motion to transfer the action to the probate division of the court of common pleas.  She also moved for leave to file an amended complaint and to substitute Nazar Kasparian and BancOhio as the proper party defendants.

The division of domestic relations dismissed the divorce and alimony causes of action and transferred the remaining claims, along with the pending motions filed by the parties, not to the probate division but to the general division of the court of common pleas.  Upon application of the parties, Judge Richard B. Metcalf of the probate division was assigned to serve in the general division for purposes of this case.  The court then denied BancOhio's motion to dismiss and granted Mrs. Dumas's motion for substitution and for leave to file an amended complaint.

Mrs. Dumas's amended complaint alleged that Mr. and Mrs. Dumas were negotiating the termination of their marriage when Mr. Dumas transferred to BancOhio, as trustee, marital assets worth approximately $450,000; that at the time of the transfer Mr. Dumas intended to defraud Mrs. Dumas; that Mr. Dumas made the transfer in anticipation of legal action by Mrs. Dumas; and that the transfer of the assets was without fair consideration and was done with the intent or belief that Mr. Dumas would incur debts or obligations beyond his ability to repay.  The complaint also alleged that Mr. Dumas transferred the assets with the intent to defeat the rights of Mrs. Dumas as a surviving spouse, and that the execution of the trust by Mr. Dumas while negotiations were taking place to terminate his marriage constituted a fraud upon the surviving spouse's marital rights.  For the above causes of action, Mrs. Dumas sought compensatory damages of $450,000 and punitive damages of $500,000. Mrs. Dumas also sought, inter alia, an order to rescind the transfer of assets to the trust, with title to the assets restored to the

name of George Dumas, and an order compelling the trustee and co-executors to transfer to her all property to which she was entitled.

The appellants filed a motion for summary judgment, which the court granted. The court stated that it was bound by this court's decision in Smyth v. Cleveland Trust Co. (1961), 172 Ohio St. 489, 18 O.O.2d 42, 179 N.E.2d 60, and by R.C. 1335.01(C), that under these authorities the trust established by Mr. Dumas was both valid and nontestamentary, and that Mrs. Dumas was therefore not entitled to a distributive share of the assets that were existing in the trust at the time of Mr. Dumas's death.

The court of appeals reversed this decision and remanded the cause for the trial court to consider whether Mrs. Dumas was a creditor within the meaning of R.C. 1335.01 and whether Mr. Dumas had made a fraudulent conveyance, or otherwise committed fraud, in creating the trust. The court distinguished our decision in Smyth by stating that when there are facts which suggest that one spouse placed assets in an inter vivos trust and out of the reach of the other spouse in anticipation of divorce, a question arises as to whether such conduct constitutes fraud. The court stated that in such a case an allegation of fraud is sufficient to allow an attack on the trust notwithstanding the decision in Smyth.

The cause is now before this court upon the allowance of a motion to certify the record.

Isaac, Brant, Ledman & Becker, Randy S. Kurek and Phillip G. Lilly, for appellee.
Thompson, Hine & Flory, William S. Fein, Thomas J. Bonasera and Barry S. Lubow, for appellants.

Wright, J. The case before us presents two issues for review: (1) whether the general division of the court of common pleas has subject matter jurisdiction over the causes of action raised by appellee in her complaint; and (2) whether the court of appeals erred in applying Smyth in the manner in which it did and in remanding this cause to the trial court for further consideration. For the following reasons, we hold that the general division does in fact have subject matter jurisdiction in this case and that the court of appeals erred in its application of Smyth and in remanding this cause. We therefore reverse the judgment of the court of appeals.

I

In their brief appellants assert that the probate division has exclusive jurisdiction over the causes of action asserted by Mrs. Dumas because the causes of action relate to the administration of Mr. Dumas's probate estate, particularly the determination of which property belongs in the estate. We disagree.

We have previously stated that "the power to define the jurisdiction of the courts of common pleas rests in the General Assembly and *** such courts may exercise only such jurisdiction as is expressly granted to them by the legislature." Seventh Urban, Inc. v. Univ. Circle Property Dev., Inc. (1981), 67 Ohio St.2d 19, 22, 21 O.O.3d 12, 14, 423 N.E.2d 1070, 1073. "The court of common pleas is a court of general jurisdiction. It embraces all matters at law and in equity that are not denied to it. *** The probate court is a court of limited jurisdiction; it can exercise just such powers as are conferred on it by statute and the constitution of the

state ***."  Saxton v. Seiberling (1891), 48 Ohio St. 554, 558-559, 29 N.E. 179, 180.

The jurisdiction of the probate division is set forth in R.C. 2101.24.  Our holding in Schucker v. Metcalf (1986), 22 Ohio St.3d 33, 35, 22 OBR 27, 488 N.E.2d 210, 213, states that pursuant to R.C. 2101.24, "the probate division has no jurisdiction over claims for money damages arising from allegations of fraud."  The amended complaint filed by Mrs. Dumas essentially alleges two causes of action: a fraudulent conveyance of assets and fraud.  She does not contest the validity of Mr. Dumas's will or challenge the inventory of his probate estate, but instead alleges that he fraudulently transferred assets to an inter vivos trust and did so with the intent to deprive her of her rights under Ohio law.  Even though in her amended complaint she seeks an order to rescind the transfer of assets to the trust and return to her certain unspecified property, which order, if granted, may affect the administration of Mr. Dumas's probate estate, her primary aim is still the recovery of monetary damages for the alleged fraud.  We therefore hold that the issues raised in the complaint were solely within the jurisdiction of the general division of the court of common pleas.

## II

The remaining issue comes to us by way of a motion for summary judgment.  "A motion for summary judgment forces the nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial."  Wing v. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus.  The moving party is entitled to judgment as a matter of law whenever the nonmoving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  Celotex Corp. v. Catrett (1986), 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273.

Mrs. Dumas's fraudulent conveyance claim falls under former R.C. 1336.07, which at the time the trust was created provided that "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present or future creditors."  (Emphasis added.)  See 129 Ohio Laws 1008.  Therefore, in order to defeat the motion for summary judgment on this claim, Mrs. Dumas has the burden to produce some evidence showing that she is in fact a creditor of Mr. Dumas.

There is no evidence in the record from which the factfinder could conclude that Mrs. Dumas was a creditor of Mr. Dumas.  The only evidence supporting her alleged creditor status comes from the fact that she had filed a divorce action against her husband.  But her claim for divorce was dismissed -- and therefore no judgment was entered in her favor -- after Mr. Dumas's death on September 17, 1988.  Had an order for alimony been granted in favor of Mrs. Dumas she could have become a creditor of Mr. Dumas, but no such order was made.

Nevertheless, Mrs. Dumas argues that she is a creditor pursuant to this court's decision in Block v. Block (1956), 165 Ohio St. 365, 60 O.O. 1, 135 N.E.2d 857.  She argues that her status became that of a creditor when she "entered into negotiations to dissolve [her] marriage" and when she and Mr. Dumas "ceased living together as husband and wife."  We strongly disagree.

In Block, the plaintiff sought to set aside certain portions of a divorce decree incorporating the terms of a contract of separation

and property settlement between the plaintiff and her husband, on the theory that the alimony award was improperly made because of fraud on the part of her husband in obtaining her signature to the contract. Prior to obtaining her signature, her husband had informed her that he had created an irrevocable trust to which he had transferred substantially all his assets. The husband fully carried out the terms of the agreement, paying to his wife all that the agreement required him to pay. But after the parties became divorced, the husband successfully challenged the validity of the trust, arguing that the assets in the trust should be reconveyed to him because of the undue influence of his father in the creation of the trust. Upon learning of this, the wife sought to set aside the settlement agreement portion of the decree for alimony under the theory that her husband had formed the trust "solely for the purpose of creating a fictitious strained financial condition ***, thus enabling [the husband] to obtain an unconscionable advantage in dealing with [the wife] in the property settlement negotiation[.]" Id., 165 Ohio St. at 368, 60 O.O. at 3, 135 N.E.2d at 860.

The court held that the wife was not entitled to relief for several reasons, including that she had full knowledge of the situation surrounding the trust before she signed the settlement agreement. The court, however, added this comment:

"A wife separated from her husband is in the position of a creditor and may set aside a voluntary conveyance by him without consideration." Id. at 377, 60 O.O. at 8, 135 N.E.2d at 865.

This sweeping statement was dictum in Block and therefore is not binding on us. Further, the facts in Block are wholly inapposite to those before us. We decline to adopt a position that in all cases in which a wife has separated from her husband she automatically attains the status of a creditor. Nor do we find that in this particular case Mrs. Dumas was in the position of a creditor with respect to Mr. Dumas.

As stated, the present case is clearly distinguishable from Block. The husband in Block established an irrevocable trust after he and his wife had separated, giving rise to an inference that there was a connection between the establishment of the trust and the impending legal action between him and his wife, that is, that the trust was perhaps created to avoid or diminish payment of spousal support. By contrast, in the present case there is no evidence from which to infer any connection between the creation of the trust by Mr. Dumas in 1986 and the divorce action filed by his wife in 1988. In response to a question about whether she thought her husband was surprised that she left him, Mrs. Dumas implied that he was surprised, stating, "he thought that I would never walk." Thus her own testimony defeats her assertion that Mr. Dumas created the trust in anticipation of legal action by her.

For the reasons stated above, we hold that the trial court properly entered summary judgment in favor of appellants with respect to the fraudulent conveyance claim by Mrs. Dumas.

### III

We turn now to the question of whether the creation of the trust was in and of itself fraudulent as to Mrs. Dumas, regardless of her creditor status. Appellants argue that no fraud was present in the creation of the trust. We agree.

The validity of the trust created by Mr. Dumas is governed by R.C. 1335.01,1 which provides, in part, that a trust is both valid and nontestamentary even though the settlor names himself trustee

and reserves the right to revoke or amend the trust agreement.  The trust created by Mr. Dumas fits within the terms of this statute; thus, the trial court properly concluded that the trust was both valid and nontestamentary.

More than thirty years ago in Smyth v. Cleveland Trust Co. (1961), 172 Ohio St. 489, 18 O.O.2d 42, 179 N.E.2d 60, paragraph two of the syllabus, this court held:

"A valid voluntary trust in praesenti, formally executed by a husband and existing at the time of his death, in which he reserved to himself the income therefrom during life, coupled with an absolute power to revoke the trust in whole or in part, as well as the right to modify the terms of the settlement and to control investments, bars the wife, upon the death of the settlor, from a claimed right to a distributive share of the property in the trust upon her election to take under the statutes of descent and distribution.  (Paragraphs one, two, three, seven, ten and eleven of the syllabus in Bolles v. Toledo Trust Co. [1944], 144 Ohio St. 195 [29 O.O. 376, 58 N.E.2d 381], and the syllabus in Harris v. Harris [1947], 147 Ohio St. 437 [34 O.O. 371, 72 N.E.2d 378], overruled.)"

Smyth stated that "[n]or can it be said that [such a] trust was 'deceiving or tending to deceive,' nor was it 'fallacious.'  No fraud is involved here.  Certainly the powers reserved to revoke or modify coupled with the right to the income for life do not make it so."  Smyth, 172 Ohio St. at 503, 18 O.O.2d at 49-50, 179 N.E.2d at 69.  The "fraud" which the court spoke of referred to the act of creating the trust itself and was a refutation of the court's reasoning in Bolles v. Toledo Trust Co., supra, in which the court had held that such a revocable trust was "illusory."  Id., 144 Ohio St. at 213, 29 O.O. at 383, 58 N.E.2d at 390.  In other words, the Smyth court's reference to a lack of "fraud" meant that there was nothing intrinsically fraudulent in the creation of a revocable inter vivos trust by a husband.  That is not to say there can never be fraud in the creation of such a trust.  In this case, however, the facts do not even suggest fraud.

We reaffirm our decision in Smyth and hold that a valid, nontestamentary trust executed by a settlor and in existence at the time of his or her death bars the settlor's spouse from claiming a distributive share in the trust assets under the statutes of descent and distribution even though the spouse is the trustee, derives all income from the trust, reserves the rights to revoke or amend the trust and to withdraw and deposit assets.  We therefore reverse the judgment of the court of appeals.

Judgment reversed.

Moyer, C.J., A.W. Sweeney, F.E. Sweeney and Pfeifer, JJ., concur.

Douglas and Resnick, JJ., dissent.

FOOTNOTE:
1  R.C. 1335.01 provides in part:
"(A) All deeds of gifts, and conveyances of real or personal property, that are made in trust for the exclusive use of the person making the gift or conveyance are void, but the creator of a trust may reserve to himself any use of power, beneficial or in trust, that he might lawfully grant to another, including the power to alter, amend, or revoke the trust.  A trust with a reserved use of power is valid as to all persons, except that any beneficial interest reserved to the creator may be reached by his creditors and

except that, if the creator reserves to himself for his own benefit a power of revocation, a court, at the suit of any creditor of the creator, may compel the exercise of the power to the same extent and under the same conditions that the creator could have exercised the power.

"***

"(C) A trust is not invalid because a person, including, but not limited to, the creator of the trust, is or may become the sole trustee and the sole holder of the present beneficial enjoyment of the corpus of the trust, provided that one or more other persons hold a vested, contingent, or expectant interest relative to the enjoyment of the corpus of the trust upon the cessation of the present beneficial enjoyment. A merger of the legal and equitable titles to the corpus of such a trust shall not be considered as occurring in its creator, and, notwithstanding any contrary provision of Chapter 2107. of the Revised Code, the trust shall not be considered to be a testamentary trust that must comply with that chapter in order for its corpus to be legally distributed to other beneficiaries in accordance with the provisions of the trust upon the cessation of the present beneficial enjoyment.

"This division applies, and shall be construed as applying, to any trust that satisfies the provisions of this division, whether the trust was executed prior to, or is executed on or after, October 10, 1991."

Alice Robie Resnick, J., dissenting. This case presents an ideal opportunity for this court to reconsider its ill-advised decision in Smyth v. Cleveland Trust Co. (1961), 172 Ohio St. 489, 18 O.O.2d 42, 179 N.E.2d 60. By reaffirming and strengthening Smyth, the majority compounds the error of that case, continuing to ignore the rights of surviving spouses whose interests are "overlooked" in the testamentary provisions of their deceased spouses. I respectfully, but vigorously, dissent.

R.C. 2106.01, formerly R.C. 2107.39, allows a surviving spouse who is not sufficiently provided for in a deceased spouse's will to elect against the will and instead receive a specified share of the deceased spouse's estate. A surviving spouse who exercises the statutory right of election does not take under the will, but instead takes up to one half of the net estate. R.C. 2106.01(C). Even though the decedent's will provides that certain of his or her property is to go to others, the surviving spouse can elect to take a portion of that property. By providing for this right of election, the General Assembly has evinced a clear intent to protect the interests of a surviving spouse. The decedent spouse's plan for the distribution of his or her estate, as expressed in the will, must yield to these important interests.

When, as in this case, a trust instrument provides that virtually all of a decedent's property passes to someone other than the surviving spouse, the same interests sought to be protected by the right of election arise. Although the trust at issue is not testamentary in nature (per R.C. 1335.01), from the surviving spouse's perspective there is no difference between this trust and a will which provides an insufficient share of the estate for the surviving spouse. The holding in Smyth (and the holding by today's majority reaffirming that decision) ignores the importance of a surviving spouse's interests protected by the statutory right of election, and fails to realize that this court can, and should, act to uphold the property interests of surviving spouses.

Prior to Smyth, decisions of this court on the surviving spouse's ability to reach trust assets did provide protection for surviving spouses. Bolles v. Toledo Trust Co. (1944), 144 Ohio St. 195, 29 O.O. 376, 58 N.E.2d 381, and Harris v. Harris (1947), 147 Ohio St. 437, 34 O.O. 371, 72 N.E.2d 378, both held that a surviving spouse could reach the assets of a revocable inter vivos trust, established by a spouse who had retained dominion and control over the trust property until his or her death, by exercising the right of election after the death of the spouse. In Smyth, this court overruled relevant parts of those two cases, and effectively put trust assets beyond the reach of a surviving spouse, even though the surviving spouse might not have been sufficiently provided for in an existing will. Id. at paragraph two of the syllabus. After the decision in Smyth, a spouse can use a trust to disinherit the other spouse, although the statutory right of election prevents the same result from being accomplished through a will.2 The majority, by refusing to question the unfair result in Smyth, perpetuates this most inequitable situation.

The Supreme Judicial Court of Massachusetts, in Sullivan v. Burkin (1984), 390 Mass. 864, 460 N.E.2d 572, overruled its prior decision in Kerwin v. Donaghy (1945), 317 Mass. 559, 59 N.E.2d 299, and effectuated precisely the result this court should have reached in this case. Kerwin held that a surviving spouse could not reach the assets of an inter vivos trust created by the deceased spouse over which the decedent spouse had retained sole dominion and control. In 1961, the Smyth court adopted the Kerwin position, establishing Ohio law identical to that of Massachusetts on this issue. In 1984, however, in Sullivan, Massachusetts abandoned Kerwin, and held "as to any inter vivos trust created or amended after the date of this opinion, we announce that the estate of a decedent *** shall include the value of assets held in an inter vivos trust created by the deceased spouse as to which the deceased spouse alone retained the power during his or her life to direct the disposition of those trust assets for his or her benefit ***." Sullivan, 390 Mass. at 867, 460 N.E.2d at 574.

In deciding whether a surviving spouse can reach the assets of an inter vivos trust created by a decedent spouse, two strong competing interests must be weighed. The right of a decedent to allocate property as he or she sees fit must be balanced against the right of a surviving spouse to share in the decedent's estate. Smyth placed great emphasis on respecting the wishes of a decedent spouse, to the extent that a surviving spouse's interests were virtually ignored. In upholding the general validity of inter vivos trusts as effective will substitutes even though their creators do not comply with the Statute of Wills, the Smyth court failed to recognize that a surviving spouse's right to reach trust assets in an appropriate situation should be recognized as an exception to the general rule. By allowing a decedent spouse an untrammeled right to use a trust to distribute assets, the Smyth court was willing to sacrifice the interests of surviving spouses.

If the rights of a surviving spouse were not sufficiently recognizable when Smyth was decided, those rights are readily identifiable today. The majority acknowledges that if Mr. Dumas had not died before the divorce proceedings were completed, Mrs. Dumas could have reached the trust assets as a judgment creditor of Mr. Dumas. However, since Mr. Dumas died while still married to Mrs. Dumas, the trust assets were beyond her reach at the moment of his

death, as dictated by the rule of Smyth. The difference in results is curious. Ohio law now requires that in divorce proceedings, property acquired during the marriage belongs to both marriage partners, and should be divided accordingly. See R.C. 3105.171(B). That Mr. Dumas created a trust to distribute property acquired during the marriage at his death would not have prevented Mrs. Dumas in the divorce proceedings from reaching the assets of the trust, inasmuch as the trust was funded with marital property. Thus, Mrs. Dumas's interests would have been taken into account if the divorce had proceeded, but are ignored since the marriage was not terminated prior to Mr. Dumas's death. The compelling policy reasons for according a divorcing spouse the opportunity to reach marital property are identical to the reasons for allowing a surviving spouse to exercise the right of election set forth in R.C. 2106.01. Today's courts should not, as the majority does, condone absolutely any attempt by one spouse to disinherit another through a revocable trust funded with marital property.

In Sullivan, supra, 390 Mass. at 871-872, 460 N.E.2d at 577, the court stated: "*** there have been significant changes since 1945 in public policy considerations bearing on the right of one spouse to treat his or her property as he or she wishes during marriage. The interests of one spouse in the property of the other have been substantially increased upon the dissolution of a marriage by divorce. We believe that, when a marriage is terminated by the death of one spouse, the rights of the surviving spouse should not be so restricted as they are by the rule in Kerwin v. Donaghy. It is neither equitable nor logical to extend to a divorced spouse greater rights in the assets of an inter vivos trust created and controlled by the other spouse than are extended to a spouse who remains married until the death of his or her spouse." (Footnote omitted.)

The majority's abbreviated discussion of the effects of fraud by a decedent spouse in the creation of a trust which disinherits a surviving spouse illustrates the unworkability of the majority's interpretation of Smyth. The majority acknowledges that theoretically there could be fraud in the creation of a trust, in which case, presumably, the trust assets could be reached by the surviving spouse. However, under the majority's reasoning, it will be extremely difficult, if not impossible, for a surviving spouse to establish that fraud was perpetrated in the creation of a trust.

The majority's assertion that "[i]n this case, *** the facts do not even suggest fraud" is questionable when one considers that this case comes to us by way of summary judgment. The uncontroverted facts of this case, when considered in a light most favorable to Mrs. Dumas, indicate a very real possibility that Mr. Dumas fraudulently created the trust to deprive Mrs. Dumas of her share of marital property.

Moreover, if this court declines to overrule Smyth, we should still recognize that a rigid interpretation of the rule of Smyth is equivalent to this court's sanctioning the disinheritance of one spouse by another. Under the majority's interpretation of Smyth, creation of such a trust will virtually never be fraudulent, and the surviving spouse will rarely be able to reach the trust assets unless perhaps the explicit statement "this trust is created to defraud my spouse" appears somewhere in the trust instrument.

It is obvious to me that serious inequities are engendered by this court's lack of foresight. The court of appeals recognized the

clear inadequacies of Smyth and realized that grave injustices could result from application of the broad rule in that case. This court in the second syllabus paragraph of Smyth went well beyond what was needed to resolve the question before it. The widow in Smyth had participated in the decision to establish the trust--clearly there was no fraud against her in the decedent husband's creation of the trust. Instead of overruling relevant parts of Bolles and Harris, which had held that the surviving spouse could reach the assets of such a trust through exercising the right of election, the Smyth court could have merely modified those cases, by holding that the surviving spouse could not reach trust assets where he or she had approved of the creation of the trust, i.e., where inequities arose by allowing the surviving spouse to reach the trust assets. The real problem with Smyth is that, through the overly broad second syllabus paragraph, it seemed to hold that a revocable inter vivos trust is never reachable by a surviving spouse who exercises the right of election. The majority primarily errs in its unsupportable ratification of Smyth's second syllabus paragraph, without realizing that Smyth should, at the very least, be limited to the facts upon which it was based.

It is surprising that the General Assembly itself has not acted to rectify the obviously erroneous holding of Smyth. The General Assembly is in a position to hold hearings and gather information to allow it to draft a bill which will protect the interests of surviving spouses, in the same way those interests were protected before Smyth. The General Assembly can also strike a balance to establish the circumstances under which trust assets would be beyond the reach of a surviving spouse. "The question of the rights of a surviving spouse in the estate of a deceased spouse, using the word 'estate' in its broad sense, is one that can best be handled by legislation." Sullivan, supra, 390 Mass. at 873, 460 N.E.2d at 578. With the increasing popularity of revocable trusts as an estate planning tool, the possibility that married persons will take advantage of the rule of Smyth to effectively disinherit their spouses has increased since Smyth was decided. Because the majority is unwilling to reconsider Smyth, I call on the General Assembly to examine this important question. If the General Assembly perceives these same inequities, that body should correct the error of Smyth through legislation.

Douglas, J., concurs in the foregoing dissenting opinion.


FOOTNOTE:
2  For a discussion of the development of Ohio law in this area, and a cogent criticism of Smyth, see, generally, Note, The Surviving Spouse's Sacred Right to Elect Against the Will:  Is It a Pyrrhic Victory? (1990), 19 Cap.U.L.Rev. 553.