**MILLER, Appellant and Cross–Appellee,**

v.

**MILLER et al., Appellees and Cross–Appellants.**

[Cite as *Miller v. Miller* (2000), 139 Ohio App.3d 512.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 75622 and 75623.

Decided Oct. 3, 2000.

*Paul Mancino, Jr.*, for appellant.

*Faulkner, Sackett & Muskovitz* and *Peter A. Sackett*, for appellees.

ANNE L. KILBANE, Judge.

Appellant/cross-appellee Julia Miller claims that Probate Court Judge John E. Corrigan erred when he adopted the opinion of Magistrate Charles E. Brown finding her late husband, Lloyd Miller's inter vivos trust valid, and denying her the use of the family home during her lifetime. She maintains that the trust instrument is a contract between a husband and wife concerning the disposition of marital property and void as against public policy. Appellees/cross-appellants Gary O. Miller, Kenneth D. Miller, Keith E. Miller, and Dale L. Miller assert that the only error of the judge was in adopting the magistrate's finding that Mrs. Miller was entitled to the entire balance of a joint and survivorship bank account under which both she and Kenneth Miller survived Mr. Miller. We affirm in part, reverse in part, and remand.

Lloyd Miller, then age forty-seven years, and Julia Dzurinda, then age fifty-one years, were married on October 4, 1968. Throughout the course of their marriage, they resided at 6207 Hampstead Avenue, Parma, Ohio, a home owned by Mr. Miller. A residence, owned by Mrs. Miller prior to her marriage, was located in Hinckley, Ohio. Her son from a previous marriage, Steven Dzurinda, lived there after her marriage, paid the mortgage on the property, and paid monthly rent of $250 to Mr. Miller.

Mr. Miller had four sons from a previous marriage: Kenneth, Keith, Gary, and Dale. Of these, three were under the age of fifteen in 1968 and lived in the Hampstead Avenue home until reaching adulthood.

Mr. Miller retired from Cleveland Twist Drill in 1981. On December 29, 1993, Mr. and Mrs. Miller each endorsed a Revocable Living Trust and Accompanying Will, prepared by Robert W. Sinkovic, who was not a licensed attorney. The trust agreements provided that each would be both settlor and trustee of his own individual trust. The instrument at issue included the following waiver clause signed by Mrs. Miller in the Lloyd G. Miller Trust:

"I, the undersigned legal spouse of the settlor (Mr. Miller), hereby waive all community property, dower or courtesy rights which I may have in the herein-above-described property and give my assent to the provisions of the trust and to the inclusion of said property."

Also included in the trust was an attachment listed as the "Schedule of Beneficiaries and Distributive Shares," which included the following:

"The Following are the named Beneficiaries of the Lloyd G. Miller Trust as of this 29th day of December, 1993.

"* * *

"2. The property located at 6207 Hampstead Avenue in the City of Parma, State of Ohio, along with the furniture and fixtures is to be distributed as follows;

"Julia Miller will have life rights to live in the residence located at 6207 Hampstead Avenue, Parma, Ohio, 44129. She may reside there as long as she lives. She will be responsible for any maintenance expenses such as water, sewer, real estate taxes. At the time of her death the property will then be sold and distributed to my said below children in equal shares or to the survivor.

"3. All power tools and property of the Trust will be distributed to my said below children in equal shares or to the survivor;

"Gary O. Miller
Kenneth D. Miller
Keith E. Miller
Dale L. Miller"

On December 29, 1993, Mr. Miller endorsed a quitclaim deed that transferred the Hampstead Avenue home to the "Lloyd G. Miller Trust." A subsequent quitclaim deed, endorsed October 30, 1995, indicated that Mr. Miller, as "Trustee," transferred the Hampstead Avenue property to himself as "Trustee" of the "Lloyd G. Miller Trust Dated 12–29–93." The second deed was endorsed by both Mr. and Mrs. Miller. On January 25, 1996, Mr. Miller transferred title of his 1993 Ford Taurus to the Lloyd G. Miller Trust. On March 15, 1996, Mr. Miller

changed his Twist Drill death benefit and retirement beneficiary to name his son Gary.

Mr. Miller died of complications from colon cancer on April 27, 1996. Mrs. Miller, unable to cope with the loss of her husband, was hospitalized two days after his death. Gary Miller then changed the locks of the Hampstead home and Kenneth Miller moved in. Mrs. Miller was diagnosed with dementia and currently resides in her son's home. To date, her total distribution from Mr. Miller's possessions consists of a bed, a dresser, and $5,000 as the survivor of a joint and survivorship bank account with Third Federal Savings & Loan Association.

Mr. Miller's sons received the automobile, approximately $70,000 from their father's Twist Drill Hourly Pension Plan through the Lutheran Brotherhood, and the Hampstead home and its furnishings. Gary and Kenneth were the joint and survivor beneficiaries of a $39,000 Third Federal Savings account, while Kenneth withdrew the entire balance of $12,482.22 from a joint and survivorship account # 0089034623 at Third Federal Savings in which he and Mrs. Miller were the joint survivors. Gary received the $6,000 Twist Drill death benefit.

On October 6, 1996, Mrs. Miller filed a complaint for declaratory judgment in the Cuyahoga County Court of Common Pleas, Probate Division, alleging four distinct causes of action: (1) the invalidity of the Lloyd G. Miller Trust; (2) a determination of the ownership of the joint and survivorship account with Third Federal Savings, account # 0089034623; (3) a determination of her right to possession of the Hampstead Avenue home; and (4) the rightful distribution of the pension fund with Lutheran Brotherhood. Miller's sons filed an answer on October 24, 1996. Third Federal Savings & Loan Association and Lutheran Brotherhood were later dismissed from the suit.

A hearing was held before the magistrate on February 23, 1998; Gary Miller, Kenneth Miller, and Steven Dzurinda testified. The magistrate's report was filed on May 21, 1998, and both Mrs. Miller and Gary Miller filed objections. On November 3, 1998, the judge entered an order adopting the magistrate's decision.

Mrs. Miller's first assignment of error states:

"I. The probate court erred in declaring the living trust, which was a contract between Lloyd Miller and Julia Miller, husband and wife, to be a valid instrument."

Mrs. Miller argues that the Lloyd G. Miller Trust is not a valid trust because (1) it failed to fully disclose Mr. Miller's assets; (2) the nature of the document is one of a contract between a husband and wife that alters their legal relationship, and thus violates Ohio public policy; (3) the superior party in a fiduciary relationship must prove the validity of a document in which he receives a benefit;

and (4) Robert Sinkovic engaged in the unauthorized practice of law in drafting these documents.

■ While the first page of Mr. Miller's trust declaration states that he desires to create a revocable trust "of the property described in Schedule A hereto annexed," no "Schedule A" is attached. Mrs. Miller argues that, when she endorsed the waiver of her marital rights, there was no disclosure of what properties were being placed in trust and, therefore, the document was invalid as to a surviving spouse. Mrs. Miller supports her contention by citing *In re Mize* (1992), 82 Ohio App.3d 97, 611 N.E.2d 460, which involved an antenuptial agreement that listed no property whatsoever. In his brief, Gary Miller counters that Mrs. Miller is mistaken and states that a copy of Schedule A is "attached hereto"; except nothing is "attached hereto" to his brief.[1]

■ An examination of the trust declaration fails to reveal a page specified as "Schedule A" but does include one (Pg. 14 of 14) called "Schedule of Beneficiaries and Distributive Shares." The Hampstead residence and its furniture and fixtures are identified with Mrs. Miller as a beneficiary, being given the right to live there during her lifetime. Further, Mr. Miller's then-living sons, as beneficiaries, are to divide evenly the proceeds from the sale of the residence after Mrs. Miller's death. Additionally, it specifies that all of Mr. Miller's power tools and property of the trust is to be divided ultimately among his then-living sons. On September 29, 1993, both Mr. and Mrs. Miller signed their trust declarations and a waiver of marital rights to trust property of the other and Mr. Miller endorsed the quitclaim deed transferring the Hampstead property. Mrs. Miller endorsed the second Hampstead quitclaim deed on October 30, 1995. These attendant circumstances are sufficient to place Mrs. Miller on notice of the real estate's being transferred to the trust. The eventual transfer of the automobile to the trust would not have to be enumerated in the trust declaration. As with any other property owned by Mr. Miller individually, Mrs. Miller would have no claim to the automobile during coverture.

We turn next to the contention that the trust declaration is against public policy. Mrs. Miller attempts to distinguish this case from the Supreme Court's holding in *Smyth v. Cleveland Trust* Co. (1961), 172 Ohio St. 489, 18 O.O.2d 42, 179 N.E.2d 60, where a widow was barred from a distributive share of her late husband's inter vivos trust estate. Mrs. Miller's attempt was not successful.

In *Dumas v. Estate of Dumas* (1994), 68 Ohio St.3d 405, 627 N.E.2d 978, syllabus, the Supreme Court reaffirmed its holding in *Smyth*, stating:

---

1. We surmise that Gary Miller meant to attach the Schedule of Beneficiaries and Distributive Shares.

518

"A valid, nontestamentary trust executed by a settlor and in existence at the time of his or her death bars the settlor's spouse from claiming a distributive share in the trust assets under the statutes of descent and distribution, even though the settlor is the trustee, derives all income from the trust, and reserves the rights to revoke or amend the trust and to withdraw and deposit assets."

As for Mrs. Miller's remaining arguments, Dumas is controlling on the argument claiming that the burden of proof on the validity of the trust rests upon Mr. Miller's trustee. Further, while we agree that Sinkovic violated R.C. 4705.01 and undoubtedly profited from the unauthorized practice of law, the subject matter of the trust declarations is legal and Mr. Miller executed a valid inter vivos trust in which he was both the settlor and the trustee. The Lloyd G. Miller Trust is a valid instrument through which he could circumvent the dower rights of his wife, and this assignment of error is overruled.

Mrs. Miller's second assignment of error reads:

"II. The court erred in not awarding relief to Julia Miller concerning occupancy of the mansion home."

Mrs. Miller argues that she was improperly ousted from the Hampstead home under both the terms of the trust and R.C. 2106.15, which grants her either an unconditional right to live in the marital residence, or, if the home is to be occupied by someone else, the fair market rental value during that time period. Gary Miller counters that she voluntarily abandoned the property, has not maintained the property as required under the trust and, more important, did not object to the magistrate's decision on the subject.

Pursuant to Civ.R. 53(E)(3)(b), "A party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule." By failing to object to an element of a magistrate's decision, an appellant ordinarily waives his right to challenge it. See *Maiher v. Maiher* (Aug. 20, 1997), Medina App. No. 2644–M, unreported, 1997 WL 537673; *Lewis v. Savoia* (Aug. 28, 1996), Summit App. No. 17614, unreported, 1996 WL 490256.

Gary Miller is correct that this alleged error was not brought to the judge's attention and that this court need not consider the alleged error. See *State v. Williams* (1977), 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364; *Johnson v. English* (1966), 5 Ohio App.2d 109, 34 O.O.2d 229, 214 N.E.2d 254. Need not, however, does not mean cannot.

We are empowered to review a claim of error such as this under the doctrine of plain error:

"[A]lthough in criminal cases '[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court,' Crim.R. 52(B), no analogous provision exists in the Rules of Civil Procedure. The plain error doctrine originated as a criminal law concept. In applying the doctrine of plain error in a civil case, reviewing courts must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings. *Schade [v. Carnegie Body Co.* (1982)], 70 Ohio St.2d [207] 209, 24 O.O.3d [316] 317, 436 N.E.2d [1001] 1003; *LeFort v. Century 21–Maitland Realty Co.*(1987), 32 Ohio St.3d 121, 124, 512 N.E.2d 640, 643; *Cleveland Elec. Illum. Co. v. Astorhurst Land Co.* (1985), 18 Ohio St.3d 268, 275, 18 OBR 322, 327–328, 480 N.E.2d 794, 800." *Goldfuss v. Davidson* (1997), 79 Ohio St.3d 116, 121, 679 N.E.2d 1099, 1103.

The failure to object to the magistrate's silence on Mrs. Miller's life interest in the Hampstead Avenue property, the magistrate's omission of a ruling on this issue, and the judge's failure to recognize this oversight are plain error. This oversight may be understandable had the record been devoid of discussion concerning this issue, but the record is replete with examples, including testimony from Mrs. Miller's son about the locks on the residence being changed to prevent access by him or his mother.

This assignment of error is sustained, and this cause is remanded to the judge to determine Mrs. Miller's rights to the Hampstead home during her lifetime.

■ Gary Miller assigns one cross-assignment of error:

"I. The trial court erred when it affirmed the report of the magistrate which ordered the defendants to pay plaintiff $12,482.22 from Third Federal Savings and Loan account."

Gary Miller contends that because Mr. Miller contributed all the money in the account of which Kenneth Miller and Mrs. Miller were joint survivors, the money should be divided equally between the two. Mrs. Miller maintains that she is entitled to all the money in the account because Kenneth Miller failed to make a single contribution into it.

The Ohio Supreme Court determined in *Wright v. Bloom* (1994), 69 Ohio St.3d 596, 635 N.E.2d 31, paragraph two of the syllabus:

■ "The opening of a joint and survivorship account in the absence of fraud, duress, undue influence or lack of capacity on the part of the decedent is conclusive evidence of his or her intention to transfer to the surviving party or

parties a survivorship interest in the balance remaining in the account at his or her death. (*In re Estate of Thompson* [1981], 66 Ohio St.2d 433, 20 O.O.3d 371, 423 N.E.2d 90, paragraph two of the syllabus, overruled.)" See, also, *In re Estate of Mayer* (1995), 105 Ohio App.3d 483, 486, 664 N.E.2d 583, 585 (the establishment of a joint and survivor bank account[s] demonstrates decedent's intent for co-owner[s] to have money in account[s] upon decedent's death.)

It was error to affirm the magistrate's decision finding that Mrs. Miller was entitled to the entire account balance. The magistrate relied on paragraph two of the syllabus of *In re Estate of Thompson* (1981), 66 Ohio St.2d 433, 20 O.O.3d 371, 423 N.E.2d 90, specifically overruled by Wright, supra. The magistrate incorrectly determined that the survivors of a joint and survivorship account are entitled to the proceeds in the amount each individually contributed. He reasoned, therefore, that Mrs. Miller was entitled to the entire balance because Kenneth Miller admitted that he had contributed nothing to the account.

Under the holding in *Wright, supra*, the creation of this joint survivorship account by Mr. Miller evidenced an intention that both Mrs. Miller and his son receive a survivorship interest. The record below does not reveal the source of the $12,000 deposited in the account on July 13, 1995, save for Mr. Miller's name heading the list of account holders. Absent evidence that Mrs. Miller contributed to that initial deposit, as one of two survivors, she would be entitled to no more than one-half of the balance in the account on the date of Mr. Miller's death. It was error to adopt the decision of the magistrate that Kenneth Miller had no survivorship interest in the balance of Third Federal Savings & Loan account #0089034623. Gary Miller's cross-assignment of error is sustained.

Accordingly, this case is remanded for a determination of the distribution of the Third Federal Savings & Loan Association account #0089034623, and of Mrs. Miller's rights to the use of the Hampstead Avenue home.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

SPELLACY, J., concurs in judgment only.

PATTON, P.J., concurs separately.

JOHN T. PATTON, Presiding Judge, concurring.

I concur in the lead opinion and write separately to expound on the reasons why counsel's failure to object to the magistrate's decision must be considered plain error.

The terms of the trust agreement provided Julia Miller with the right to reside in the marital residence until the time of her death. This right could be exercised at any time during her life and did not require her continuous habitation at the house in order to be effective. The record convincingly shows that one of Lloyd Miller's sons took possession of the house and converted it to his own use with no apparent regard for his stepmother's interest in the property. While that son was one of four remaindermen (along with his three brothers), his right to inhabit the property did not, and could not, vest until Julia Miller's death.

With full regard for the high standard one must meet in order to demonstrate plain error, I believe the magistrate's failure to consider this point, and counsel's failure to object to the omission, were error of the plainest kind. There is no evidence whatsoever to overcome Julia's right to live in the house. The court would work a substantial injustice on Julia were it to ignore her rights under the trust. For this reason, I concur with the lead opinion.

## OBJECTIONS TO GRATUITOUS USE OF TRIAL JUDGE NAMES

In the past, I have been reluctant to concur in judgment only in lead opinions making gratuitous mention of trial judges' names. My reluctance stemmed from my belief that a concurrence in judgment only might give the mistaken impression that I found fault with the legal reasoning contained in the lead opinion. Because that has not been the case, I have given my full concurrence to opinions that I believe contain correct analyses of the law, yet nonetheless make unnecessary mentions of judges and court personnel. In light of this court's decision to propose an amendment to Rule 22(C) of the Eighth District Court of Appeals, I believe it is time for me to make a more definitive statement of my reasons for supporting the adoption of the proposed rule.

At the most recent meeting of the judges of the Eighth Appellate District, an overwhelming majority proposed to amend Loc.App.R. 22 by adding a section (C). That section states that opinions of this court will not identify or make reference to the names of judges, magistrates, court officials, or counsel for the parties "unless such reference is essential to clarify or explain the role of such person" in the course of the proceedings. We have invited public comment on the proposed amendment to Loc.R. 22 pending a final vote on the rule.

It is no coincidence that neither the Supreme Court of the United States nor the Supreme Court of Ohio makes it a practice to single out the names of lower court judges as a means of accountability. As the highest courts of their respective jurisdictions, they set a tone of collegiality for all lower courts. Implicit in this idea of collegiality are the words of Justice Jackson, who famously wrote:

"[R]eversal by a higher court is not proof that justice is thereby better done. There is no doubt that if there were a super-Supreme Court, a substantial proportion of our reversals of state courts would also be reversed. We are not final because we are infallible, but we are infallible only because we are final." *Brown v. Allen* (1953), 344 U.S. 443, 540, 73 S.Ct. 397, 427, 97 L.Ed. 469, 533 (concurring in result).

These are healthy words for us judges, for they remind us that the interpretation of the law is subject to legitimate differences of opinion. It would be the highest form of arrogance for us to presume that our position as appellate judges makes us qualified to pass judgment on individual lower court judges, as opposed to the cases those judges decide. The last word is not necessarily the best word and our proposed rule is meant to ensure that the judges of Eighth District do not forget it.

I am aware of the suggestion that our proposed amendment to Loc.App.R. 22 could be a form of court-imposed censorship but reject those suggestions as red-herrings. It is disingenuous to suggest that this proposed rule of court procedure would have chilling effect on the writing judge's thought processes to the extent it could be considered censorship. Application of the proposed rule would not change the tone or result of an opinion. Proposed Loc.App.R. 22(C) is no more akin to telling a judge how to write than it is to expect a judge's writings to adhere to a uniform system of citation. In this case, application of the proposed rule would result in the deletion of titles and names of the trial judge and the magistrate. That deletion would have absolutely no substantive effect on the outcome of the opinion. The deletion of six words would be the only discernable consequence of the proposed rule. This is not censorship.

In *Chandler v. Judicial Council of Tenth Circuit of the United States* (1970), 398 U.S. 74, 84, 90 S.Ct. 1648, 1653, 26 L.Ed.2d 100, 108, the United States Supreme Court stated:

"There can, of course, be no disagreement among us as to the imperative need for total and absolute independence of judges in deciding cases or in any phase of the decisional function. But it is quite another matter to say that each judge in a complex system shall be the absolute ruler of his manner of conducting judicial business."

The Eighth District Court of Appeals is comprised of twelve judges, all of whom have different points of views on a variety of issues. While we strive to accommodate those points of view, none of us can be the absolute ruler of our manner of conducting judicial business. In the end, we are members of a court and this court has every right to set standards for what it believes is the proper way of conducting its business.

Proposed Loc.R. 22(C) does not compromise the intellectual integrity of a judge's work product or infringe on a judge's independence to decide cases. It represents this court's attempt to preserve the dignity of this judicial office, as those higher courts which govern us have done. Because the members of this court support proposed Loc.R. 22(C), I note my objection to the writing judge's insistence upon gratuitously inserting into the lead opinion the names of the trial judge and court personnel involved in this case.

SPELLACY, Judge, concurring in judgment only.

I concur in judgment only with the majority opinion. As an initial matter, I note that it is not the general practice of this court to name trial judges and magistrates in appellate opinions. Therefore, I adopt the concurring opinions in *State v. Thomas* (May 13, 1999), Cuyahoga App. Nos. 72536 and 72537, unreported; and *Garnett v. Garnett* (Sept. 16, 1999), Cuyahoga App. No. 75225, unreported, 1999 WL 728378.

I concur with the majority's review of plaintiff's first assignment of error and defendants' cross-assignment of error. As far as the second assignment of error, I can concur only with the final disposition. As a cautionary note, I underscore that the plain error doctrine should be used only under exceptional circumstances, and not freely exercised whenever an appellate court perceives a possible inequity.

## JOURNAL ENTRY

### Decided Oct. 3, 2000

Appellant Julia Miller requests reconsideration of our decision announced August 17, 2000, on the basis that we overlooked the contractual nature of her waiver of dower rights in her late husband Lloyd Miller's real property transferred to his trust, and that we failed to consider evidence that the money in the joint and survivor bank account in her name, and those of Miller and her stepson, could not have come from sources attributable to her. We disagree and deny reconsideration.

She claims that we erroneously applied *Smyth v. Cleveland Trust Co.* (1961), 172 Ohio St. 489, 18 O.O.2d 42, 179 N.E.2d 60, to uphold Miller's trust as a valid *inter vivos* instrument cutting off her rights in the once-marital real property transferred to the trust. When she waived her marital rights in the real estate transferred to the trust pursuant to a contract, it altered the legal relation between marriage partners and, she claims, such a contract is void as against public policy. Thus, she attacks the means by which the property was transferred to the trust and not the validity of the trust itself.

Mrs. Miller would have us misconstrue the nature of the transaction at issue. Although she claims that her waiver of marital rights was contractual, we find no evidence of any unlawful contractual arrangement. There was no evidence that Mrs. Miller had any contractual agreement with her husband to waive her marital rights and sign a deed transferring the property to the trust. If we accept Mrs. Miller's argument, no married couple could ever transfer real property because the transfer would constitute an illegal contract to waive at least one spouse's dower or distribute rights; we decline to impose such restrictions on the alienation of property. The record before us reveals nothing more than a gratuitous waiver and transfer, and no authority denies a spouse the ability to waive such rights gratuitously.

Mrs. Miller next claims that we failed to credit evidence proving that all of the money in the account to which she and Kenneth Miller are joint survivors came from sources attributable to her, including her employment and the payment of rents from her real property. We find her cited evidence inconclusive at best, and maintain the opinion that the record failed to show the source of those funds. Our opinion is unchanged.

The motion for reconsideration is denied.

*Motion denied*

JOHN T. PATTON, P.J., LEO M. SPELLACY and ANNE L. KILBANE, JJ., concur.