STURGILL, Appellee,

v.

STURGILL, Appellant.

[Cite as *Sturgill v. Sturgill* (1989), 61 Ohio App.3d 94.]

Court of Appeals of Ohio,
Montgomery County.

No. 11039.

Decided Feb. 23, 1989.

*Ronald H. Finkleman,* for appellee.

*Konrad Kuczak,* for appellant.

BROGAN, Judge.

Appellant, Dewey Jackson Sturgill, appeals from a judgment of the Montgomery County Common Pleas Court denying his motion to vacate a certain judgment of divorce granted his former wife, appellee Beulah Margaret Sturgill.

In his sole assignment of error, appellant contends the trial court committed prejudicial error in overruling his motion to vacate the judgment of divorce.

The record establishes that the appellee filed a complaint for alimony only in Montgomery County, Ohio, on July 17, 1987. In the complaint she alleged that she had been a resident of the state of Ohio for at least six months preceding the filing of her complaint. She alleged that the defendant had been guilty of gross neglect of duty and had abused the plaintiff. She alleged that the parties were the owners of certain household goods located at a certain apartment in the city of Dayton, Ohio. She listed her address as 1635 Watervliet Avenue, Apt. B, Dayton, Ohio, in the caption of the complaint. She listed certain bank accounts in her affidavit of income and financial disclosure as being located in Roanoke, Virginia.

The defendant answered the complaint and admitted the jurisdictional allegation in the complaint. He counterclaimed for divorce and alleged that he had been a resident of the state of Ohio for six months preceding the filing of his counterclaim. He further stated he "adopted the first two paragraphs of the plaintiff's complaint as his own." (The first paragraph of plaintiff's complaint was her jurisdictional allegation.) He alleged that the plaintiff had been guilty of gross neglect and extreme cruelty toward him.

On October 19, 1987, the parties appeared in open court and informed the court that they had reached a property settlement agreement which was read into the record. Plaintiff's counsel stated on the record:

"MR. FINKLEMAN: We would like the Court's permission to amend for divorce, at bar for divorce and to proceed on a divorce and we would like the

Court's permission and tolerance to allow us until January 2 to file the final decree so that Mrs. Sturgill may be assured of receiving Cobra medical benefits continuation which G.M. has been telling us will only be sure after January 1.

"MR. BEYOGLIDES: The only thing I would like to add to what Mr. Finkelman has stated, your honor is that if Mrs. Sturgill goes back to work. She has a duty to notify either Mr. Sturgill or his legal representative. * * * "

The court stated it would allow the "amendment from alimony to divorce." The defendant voiced no objection to the plaintiff's proposed amendment. The court then proceeded to hear the testimony of the plaintiff. She testified she was a resident of the state of Ohio for six months prior to amending her complaint for divorce and her original complaint for alimony.

The defendant was called upon cross-examination and testified he left the marital home in Ohio in February 1987 and refused to reside with his wife. The court found the plaintiff was entitled to a final judgment and decree of divorce.

On January 29, 1988, the trial court entered the final judgment granting plaintiff a divorce from the defendant. In the judgment the court found that the matter had been heard upon the amended complaint of the plaintiff for divorce, the defendant having withdrawn his answer and counterclaim. The court found that the plaintiff had met her residency requirement, proven her grounds, and was entitled to a divorce. The court found the parties had entered into a settlement agreement regarding the disposition of marital property and the payment of alimony. The court approved their agreement and granted plaintiff a divorce from the defendant.

On April 8, 1988, the defendant filed a motion to vacate the divorce decree because he contended the plaintiff had fraudulently represented her residential status and thus the court lacked subject matter jurisdiction to grant her a divorce. Defendant attached to his motion a certificate from the General Registrar of Scott County, Virginia, that indicated that the plaintiff had voted in an election in Virginia in 1987. Counsel also attached an unverified copy of a deposition of Beulah Sturgill taken some time after the divorce wherein she stated she had Virginia and Ohio driver's licenses, and owned an interest in property in Virginia.

On May 24, 1988, the trial court overruled the defendant's motion to vacate the divorce decree. Appellant contends the trial court erred in not vacating the decree of divorce in light of the "irrefutable" fact contained in the evidentiary material attached to his motion that appellee was not a resident for the requisite period prior to filing her complaint. Appellant argues the

axiom that lack of subject matter jurisdiction is not a waivable defense and may be raised for the first time on appeal, citing *In re Claim of King* (1980), 62 Ohio St.2d 87, 16 O.O.3d 73, 403 N.E.2d 200, and other pertinent authorities.

Appellee argues that the appellant is estopped from attacking the jurisdiction of the court because he admitted in his answer that the plaintiff had been a resident of Ohio for six months preceding her complaint for alimony only.

In *Aros v. American Ship Building Co.* (1933), 15 Ohio Law Abs. 391, the Lorain County Court of Appeals held that where jurisdiction of the subject matter depends upon the establishment of an issuable fact and the parties expressly or by their conduct concede the existence of such fact, submit to the jurisdiction of the tribunal, and permit the question involved to proceed to final disposition without raising the jurisdictional question, such parties are thereafter estopped to raise the question of jurisdiction in subsequent proceedings.

The Ohio Supreme Court has held that although adverse parties may not confer jurisdiction upon a court by marital consent, where none would exist, they may stipulate the truth of facts that are sufficient to confer jurisdiction. *Beatrice Foods Co. v. Porterfield* (1972), 30 Ohio St.2d 50, 59 O.O.2d 76, 282 N.E.2d 355.

In *Ferguson v. Neighborhood Housing Services* (C.A.6, 1986), 780 F.2d 549, the Sixth Circuit Court of Appeals held that by admitting in his answer that it was a Fair Labor Standards Act employer, the employer admitted a fact, establishment of which created federal subject matter jurisdiction under the Federal Labor Standards Act of 1938.

In *Ferguson,* the plaintiff filed suit against her former employer Neighborhood Housing Services alleging sex-based wage discrimination. The complaint invoked federal jurisdiction pursuant to the Equal Pay Act, Section 206(d)(1), Title 29, U.S.Code, which is part of the Fair Labor Standards Act. The plaintiff asserted that NHS was an employer with the meaning of the Act. NHS admitted in its answer it was an employer with the Act, and did not challenge its status as an FLSA employer until shortly before trial was scheduled to begin. The jury returned a verdict in favor of Ms. Ferguson, and NHS appealed contesting the trial court's subject matter jurisdiction over the case.

Senior District Judge Joiner stated in *Ferguson,* at 550 and 551:

"The primary issue presented by this appeal is the significance and effect of NHS' admission in its answer that it is an employer within the meaning of the FLSA. Ferguson argues that NHS voluntarily made a binding judicial admis-

sion. She concludes that this admission precludes NHS from asserting that it is not such an employer, the facts of which, among others, the court obtains jurisdiction to act.

" * * *

"NHS contends that its admission does not preclude it from challenging federal subject matter jurisdiction. It argues 'no action of the parties can confer subject matter jurisdiction upon a federal court,' quoting *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982). While NHS correctly quotes *Compagnie des Bauxites*, it overlooks the distinction between an admission that federal subject matter jurisdiction exists, and an admission of facts serving in part to establish federal subject matter jurisdiction. As the Supreme Court stated in an early case:

" [']Consent of parties cannot give the courts of the United States jurisdiction, but the parties may admit the existence of facts which show jurisdiction, and the courts may act judicially upon such an admission.[']

"*Railway Co. v. Ramsey*, 89 U.S. 322, 327, 22 Wall. 322, 22 L.Ed. 823 (1874); *United States v. Anderson*, 503 F.2d 420, 422 (6th Cir.1974) (quoting *Ramsey*). * * *

"Turning to NHS' admission that it is an FLSA employer, the court concludes that NHS has admitted a fact and the establishment of that fact creates federal subject matter jurisdiction. The admission does not constitute NHS' consent to subject matter jurisdiction itself, which no party may validly give, but it does constitute a statement that NHS is a type of employer. *Compagnie des Bauxite, supra*. The law then gives to the federal courts jurisdiction over cases against that type of employer.

"The rule that jurisdictional facts which are admitted by the parties may establish subject matter jurisdiction over a case is a salutary one that promotes speedy and expensive litigation. Rule 11 of the Federal Rules of Civil Procedure requires the lawyer to certify that the allegations made in pleadings are grounded in fact, based on reasonable inquiry. The early elimination of litigation over facts forming the basis for the court's jurisdiction should be encouraged. NHS should be bound, and is bound by its admission, as it has made no showing of exceptional circumstances mandating relief from the admission."

In *DeFrischia v. New York Cent. RR.* (C.A.3, 1960), 279 F.2d 141, the Third Circuit Court of Appeals reversed a judgment dismissing the action for want of diversity. The parties had stipulated the requisite jurisdictional facts and extensive pretrial proceedings had been held, and after the statute of limita-

tions had run, the defendant sought to withdraw the stipulation and dismiss the action. The district court acquiesced, but the Third Circuit reversed, refusing to permit the defendant to "play fast and loose with the judicial machinery and deceive the courts." *Id.* at 144.

The voidness doctrine was born in the struggles over judicial power in England and came of age in the accommodations to federal coexistence among the national and state judiciaries in the United States in the last century. With the growing emphasis on finality in this century, it has entered its dotage. It is now apparently confined to occasional forays in the name of public policy. Note, Filling the Void: Judicial Power and Jurisdictional Attacks in Judgments (1977), 87 Yale L.J. 164.

As Justice Frankfurter indicated, litigants are not helpless before usurping courts. If a court deliberately ignores the legislative mandate and usurps power to impose its will in a particular way, then the judgment would be void in any case, since due process requires an impartial tribunal. Against anything less than such a deliberate overreaching, however, the adversary process ought to provide sufficient protection. If the jurisdictional issue is raised, it may be preserved on appeal; if it is not raised, there is little reason to treat the failure differently from other errors a litigant may make. Erroneous decisions on nonjurisdictional issues can be at least as troubling in terms of abuse of judicial power as are errors respecting jurisdiction. Note, *supra,* at 203–204.

In *Sherrer v. Sherrer* (1948), 334 U.S. 343, 68 S.Ct. 1087, 92 L.Ed. 1429, the United States Supreme Court held that the requirements of full faith and credit bar a defendant from collaterally attacking a divorce decree on jurisdictional grounds in the courts of a sister state where there has been participation by the defendant in the divorce proceedings, where the defendant has been afforded full opportunity to contest the jurisdictional issues, and where the decree is not susceptible to such collateral attack in the courts of the state which rendered the decree. *Williams v. North Carolina* (1945), 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577, distinguished.

The Supreme Court held further that if the application of the Full Faith and Credit Clause to cases of this nature requires that local policy be subordinated, that is the price of our federal system. That vital interests are involved in divorce litigation makes it a matter of greater rather than lesser importance that under the circumstances of this case litigation end in the courts of the state in which the decree was rendered. *Sherrer v. Sherrer, supra,* at the syllabus.

▉ The "bootstrap" doctrine normally operates to foreclose a collateral attack upon the jurisdiction of a court that has rendered a final judgment. Its

premise is that every court has jurisdiction to decide its own jurisdiction, unless the legislature has decided otherwise. When a court has jurisdiction to decide an issue, it has the power to decide wrongly as well as rightly. Even if its decision in favor of its jurisdiction is erroneous, it is valid. It may be reversed on appeal, but if an appeal is not taken, the decision stands, and is binding. The second half of the bootstrap doctrine premises that any unappealed decision is res judicata in subsequent litigation. Since the trial court has jurisdiction to decide its own jurisdiction, its decision is not void but is, on the contrary, res judicata, unless policies of res judicata indicate otherwise. If the same reasoning is followed in motions after final judgment under Civ.R. 60(B), it could be said that when the trial court has jurisdiction to decide its own jurisdiction, any judgment it renders is not void at all, but is at most erroneous and reversible upon appeal only. See, generally, *United States v. UMW* (1947), 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884. Civ.R. 60(B) serves a good purpose in permitting correction of mistakes that go to the essential fairness of the proceeding, but jurisdictional defects have nothing to do with fairness. The only reason for permitting a post-judgment attack on jurisdiction under Rule 60(B) is to permit the parties to do directly what they may do indirectly by collateral attack. Where the parties cannot collaterally attack a judgment for lack of jurisdiction—which is the usual case in federal courts under the bootstrap doctrine—there is no reason to permit a belated direct attack under Rule 60(B). Dobbs, Beyond Bootstrap: Foreclosing the Issue of Subject–Matter Jurisdiction Before Final Judgment (1967), 51 Minn.L.Rev. 491, 496–499.

▇▇▇▇ It has generally been stated that objections to jurisdiction of the subject matter may be raised at any time. This is correct, however, in only two situations: if the record does not show jurisdiction, the objection may be made at any time; and an objection to the jurisdiction of the appellate court hearing the case can be made at any time. State courts and many lower federal courts appear to assume that jurisdictional objections may be urged, at any time. The correct rule, however, is that if the record shows jurisdiction, by allegation or admission of the parties as to jurisdictional facts, the trial judge may refuse to hear a jurisdictional objection urged after an answer is filed to the merits. In addition, the bootstrap principle should preclude a jurisdictional attack urged after a final judgment. See Dobbs, *supra,* at 529.

In Comment *d* to Section 12 of 1 Restatement of Law 2d (1982), Judgments, at 122, it is stated:

"The interests primarily at stake in resolving this question are governmental and societal, not those of the parties. By hypothesis the parties had earlier

opportunity to litigate the question of jurisdiction and thereby to protect their interest in the rules governing competency. They also had their day on the merits, even if before a body whose authority is now in doubt. To allow one of them to raise the question of subject matter jurisdiction after judgment is in effect to make him a public agent for enforcing the rules of jurisdiction. But the public interest, though substantial, also has its protectors in other litigants on other occasions, who will have opportunity and incentive to object to the excess of authority if it is repeated.

"The question therefore is whether the public interest in observance of the particular jurisdictional rule is sufficiently strong to permit a possibly superfluous vindication of the rule by a litigant who is undeserving of the accompanying benefit that will redound to him. The public interest is of that strength only if the tribunal's excess of authority was plain or has seriously disturbed the distribution of governmental powers or has infringed a fundamental constitutional protection."

█ In the case at hand, the appellee asserted in her initial complaint for alimony that she had been a resident of this state for at least six months preceding the filing of her complaint for alimony on July 17, 1987. This allegation of residency was gratuitous as no such residential allegation was required in order to seek alimony only. *Gieg v. Gieg* (1984), 16 Ohio App.3d 51, 16 OBR 55, 474 N.E.2d 626.

Nonetheless, appellant answered appellee's complaint and admitted her allegation of residency. He also counterclaimed for divorce and asserted he met the jurisdictional six-month residency requirement required under Ohio law. See R.C. 3105.03. Over the next three months the parties apparently worked out their differences concerning the termination of their marriage and the settlement of their respective interests in marital property and alimony.

On October 19, 1987, they both appeared in open court and informed the court they had resolved the contested divorce action. Counsel for the appellee read the parties' agreement into the record, and then he called the appellee to testify. He requested permission to amend *at bar* appellee's complaint for alimony only to one for divorce. No objection to such an amendment was interposed by the appellant.

Appellee testified she was a resident of Ohio for six months prior to her filing her complaint for alimony. Appellant was called upon cross-examination and admitted he left the *marital home in Ohio* in February 1987 and refused to reside with the appellant. The appellee was granted a divorce.

Although the record fails to disclose at what point in the proceedings, appellant was permitted to withdraw his answer and counterclaim, the final judgment indicates the defendant did withdraw his answer and counterclaim.

The court in its final judgment determined plaintiff had met her jurisdictional requirement of residency. Appellant did not appeal the final judgment of divorce. As such the court's judgment is now final and subject to the principles of res judicata.

Appellant contends in his motion to vacate the judgment that the appellee fraudulently misrepresented her residency in Ohio in order to permit the Ohio court to obtain jurisdiction over the appellant's retirement and workers' compensation benefits while concomitantly concealing her interest in a marital residence in Virginia.

In the memorandum accompanying the motion to vacate, appellant admits he instituted a collateral action in Virginia to procure an equitable interest in the Virginia property *prior* to the entry of the final divorce in Ohio. Appellant does not indicate when he became aware that appellee voted in a Virginia election in 1987 or when that election occurred.

■ The provision of the Civil Rules that relief may be granted from judgments for intrinsic or extrinsic fraud, misrepresentation, or other misconduct of an adverse party does not mention false testimony, but is similar to a former statute. See Staff Notes to Civ.R. 60(B). This statute specifically provided that false testimony was a ground for relief from a judgment. R.C. 2325.01(J). The statute permitted the court to vacate a judgment which was obtained by false testimony on the part of the successful party, or any witness in his behalf, which ordinary prudence could not have anticipated or guarded against.

If judgments were vacated upon an allegation of perjured testimony merely, there would be no stability to any judgment, nor any end to litigation. *Minetti v. Einhorn* (1930), 36 Ohio App. 310, 173 N.E. 243. On the other hand, a conspiracy to obtain judgment by false testimony where the judgment obtained was based upon such false testimony was adjudged to constitute fraud sufficient for the vacation of the judgment. *Baldwin v. Sheets* (1884), 39 Ohio St. 624.

The procedural requirements for the application of Civ.R. 60(B) must be interpreted to satisfy the rule's purpose of doing substantial justice. The parties to this divorce were hardly strangers to each other. The evidence established they had been married for nearly twenty years. Appellant had

been on notice since July 17, 1987 that his wife contended she was a resident of the state of Ohio for a six-month period. The evidence established they had lived together in Ohio and the appellant had left appellee's marital home in Ohio in February 1987 and refused to live with his wife. Appellant initially admitted her allegation of residency and his answer was withdrawn apparently so the divorce could be obtained by her uncontested. Appellant was aware that certain bank accounts in the parties' names existed in Virginia. He became aware of the Virginia real estate before the court entered the final judgment. While voting in Virginia would not be consistent with a claim of Ohio residency, the date of that election is not apparent from the evidentiary material.

Appellant does not contest that the trial court had subject matter jurisdiction to grant divorces generally. The pleadings and the testimony demonstrate "apparent" residency compliance. There is no evidence of collusion to obtain the divorce in Ohio. Appellant did not appeal the final judgment. From a constitutional perspective, there were certainly minimal contacts with Ohio by both the appellant and the appellee. We fail to see how allowing the judgment to stand would substantially infringe on the authority of another tribunal or agency of government, *i.e.*, Virginia courts. See Restatement of Judgments, *supra*, at Section 12.

In summary, we find no error in the trial court's denial of the appellant's motion to vacate the final decree of divorce. The appellant's assignment is overruled.

The judgment of the trial court will be affirmed.

*Judgment affirmed.*

WILSON and GRADY, JJ., concur.