UNITED STATES of America, Plaintiff,

v.

The ATLAS LEDERER COMPANY, et al., Defendants.

No. C–3–91–301.

United States District Court, S.D. Ohio, Western Division.

Feb. 16, 2000.

Patrick Dennis Quinn, U.S. Attorney's Office, Dayton, OH, Matthew A. Fogelsonm, Gregory L. Sukys, U.S. Dept. of Justice, Environmental Enforcement Sec-

tion, Washington, DC, David F. Musel, U.S. Dept. of Justice & Natural Resources Division, Environmental Enforcement Section, Washington, DC, Gregory L. Lattimer, Environmental Enforcement Section, Land and Natural Resources Division, U.S. Dept. of Justice, Washington, DC, David A. Carson, U.S. Dept. of Justice, Environment and Natural Resources Div., Environmental Defense Section, Washington, DC, Cecilia E. Kim, Environmental Defense Section, Environment and Natural Resources Div., U.S. Dept. of Justice, Washington, DC, Thomas Giller, U.S. Dept. of Justice, Chicago, IL, Sherry L. Estes, Asst. Regional Counsel, U.S. Environmental Protection Agency, Chicago, IL, Jacqueline Schuster Hobbs, Benesch, Friedlander Coplan & Aronoff, Cincinnati, OH, for plaintiff.

Michael A. Cyphert, Heather A. Austin, Louis L. McMahon, Cleveland, OH, for defendants.

## DECISION AND ENTRY OVERRULING SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT (DOC. # 400) FILED BY DEFENDANT LIVINGSTON & CO., INC.

RICE, Chief Judge.

This matter comes before the Court upon a supplemental Motion for Summary Judgment (Doc. # 400) filed by Defendant Livingston & Co., Inc. ("Livingston"). The basis for Livingston's Motion is that the recently enacted Superfund Recycling Equity Act, P.L. 106–113, constitutes a "potentially dispositive legislative development" which strengthens its argument for judgment as a matter of law.[1]

With some exceptions, the Superfund Recycling Equity Act provides that a person who "arranged for the recycling" of "recyclable material" shall not face liability under sections 107(a)(3) or 107(a)(4) of CERCLA.[2] The Act defines "recyclable material" to include spent lead-acid, nickel-cadmium and other types of batteries. Under certain circumstances, the Act deems transactions involving such batteries to be "arrangements for recycling" which are beyond the scope of CERCLA. In its renewed Motion for Summary Judgment, Livingston argues that its prior sales of junk batteries to the United Scrap Lead Company qualify as "arrangements for recycling" under the new legislation. Therefore, it argues that such transactions do not subject it to liability under the terms of the Superfund Recycling Equity Act. (Doc. # 400 at 4–5).

Livingston properly recognizes, however, that § 127(i) of the Act renders the foregoing exemptions from CERCLA liability inapplicable to "any pending judicial action initiated by the United States prior to" the enactment of the new legislation. In light of this exclusionary language, Livingston concedes that it is deprived "of the literal application of the Recycling Equity Act for the claim asserted directly by the United States." (*Id.* at 6). Nevertheless, Livingston argues that the Court should consider the "spirit and intent" of the legislation. It also insists that § 127(i) does not apply to any cross-claims or third-party claims for contribution which have been asserted by the Respondent Group. In support, Livingston notes that any such cross-claims and third-party claims were not "initiated by the United States." Rather, they were initiated by the Respondent Group. Consequently, Livingston argues that the Superfund Recycling Equity

---

1. The Superfund Recycling Equity Act amends the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601, *et seq.* by, inter alia, exempting from liability many persons who arrange for the recycling of certain materials, including spent batteries. The Act was signed into law by President Clinton on November 29, 1999.

2. In the present case, the United States alleges that Livingston is liable under § 107(a)(3). The Respondent Group seeks contribution from Livingston, pursuant to 42 U.S.C. § 9613(f), based upon Livingston's alleged liability under section 107(a)(3).

Act *does* preclude the Respondent Group's contribution claims against it.

Upon review, the Court finds Livingston's supplemental Motion for Summary Judgment unpersuasive. The plain language of the new legislation precludes its applicability in the present case. As noted above, § 127(i) provides:

> (i) Effect on Pending or Concluded Actions. The exemptions provided in this section *shall not affect* any concluded judicial or administrative action or *any pending judicial action initiated by the United States prior to enactment of this section.*

(Emphasis added).

Although Livingston acknowledges the foregoing language, it urges the Court "to recognize what the Act itself recognizes[,] that selling used batteries to a recycler which extracts the lead from the batteries does not constitute an attempt to dispose of a hazardous substance." (Doc. # 410 at 3). Stated differently, Livingston "urges this Court to consider the fairness of holding [it] liable when the Act, although not technically applicable, codified what had previously existed under case law in the useful product defense." (*Id.*).

The Court cannot agree with Livingston's assertion that the Superfund Recycling Equity Act constitutes a mere codification of existing case law. In overruling a prior Motion for Summary Judgment

filed by Livingston (Doc. # 330), the Court carefully reviewed existing case law and found the company's "useful product" defense inapplicable under the present circumstances. Even while arguing that the Superfund Recycling Equity Act is nothing more than a codification of existing case law, Livingston properly recognizes that the effect of the legislation "is to render the *whole line of precedent cases* referenced by Respondent Group *inapplicable as to any action filed by the United States after passage of the Act.*"[3] (Doc. # 410 at 3) (Emphasis added). The Court relied upon these precedent cases when overruling Livingston's prior Motion for Summary Judgment. The Court's reliance upon such legal precedent was appropriate, given that the United State filed the present action approximately *eight years* prior to passage of the Superfund Recycling Equity Act, which does not apply to such pending litigation.

The Court finds Livingston's second argument equally unpersuasive. As noted above, Livingston contends that § 127(i)—which precludes application of the Superfund Recycling Equity Act to any "pending judicial action initiated by the United States" prior to its enactment—does not apply to the Respondent Group's cross-claims and third-party claims for contribution under CERCLA. In support, Livingston reasons that if § 127(i) "encompassed

**3.** Prior to the enactment of the Superfund Recycling Equity Act, Congress recognized that an unintended consequence of CERCLA has been the imposition of liability upon entities such as Livingston, which sold recyclable materials to third-parties. Congress passed the new legislation to *nullify* the effect of existing case law imposing such liability, not to *codify* it. *See, e.g.*, 145 Cong.Rec. S.13086–01, 1999 WL 968272 (Oct. 25, 1999) (statement of Sen. Lott) (explaining that the Superfund Recycling Equity Act "addresses only one Superfund issue—the unintended consequence of law that holds recyclers responsible for the actions of those who purchase their goods. The goal of the bill is to remove the liability facing recyclers...."); 145 Cong. Rec. S.10391.01, 1999 WL 593813 (Aug. 5, 1999) (statement of Sen. Lott) ("[W]hen the

Congress passed the Comprehensive Emergency Response, Liability and Compensation Act (CERCLA), members of both bodies did not want, and did not suggest, that traditional recyclable materials ... should be any more subject to Superfund liability than a competitive product made of virgin material. However, that is how the courts have interpreted Superfund."); 144 Cong.Rec. S6405–03, 1998 WL 314995 (June 16, 1998) (recognizing that prior to CERCLA's recent amendment, "selling recyclable materials [was] equivalent to 'arranging for disposal'"); 141 Cong.Rec. S.449201, 1995 WL 123885 (March 23, 1995) (statement of Sen. Warner) (noting that "courts have presumed that any transaction of material which is no longer useful in its current form is a waste treatment or disposal transaction").

every existing pending claim, the language 'initiated by the United States' would not have been necessary." (Doc. # 409 at 3).

Although Livingston has not cited any legislative history regarding the Superfund Recycling Equity Act, the Congressional Record does contain commentary from Senator Daschle, a sponsor of the legislation, which supports the company's argument. Shortly before passage of the Act, Senator Daschle read "legislative history" into the record, stating in relevant part:

> [Section] 127 shall not affect any pending judicial action brought by the United States prior to enactment of this section. Any pending judicial action ... by a private party shall be subject to the grant of relief from liability. For purposes of this section, Congress intends that any third party action or joinder of defendants, brought by a private party shall be considered a private party action, regardless of whether or not the original lawsuit was brought by the United States.

145 Cong.Rec. S14986–03, S15050, 1999 WL 1050353 (Nov. 19, 1999).

Although Senator Daschle referred to the foregoing commentary as "legislative history," he did not indicate its source. He simply read the remarks into the record. The Court has found no true legislative history with respect to § 127(i) which would support his interpretation of the provision. The legislation was introduced in November, 1999, as part of an appropriations bill, and it was signed into law later that month. Consequently, no significant debate or reporting took place.

Despite Senator Daschle's remarks, the plain language of § 127(i) does not preclude the contribution claims brought by the Respondent Group. As noted above, § 127 provides that the Superfund Equity Recycling Act does not affect any "pending judicial action initiated by the United States." The present litigation, as a whole, constitutes *a judicial action* initiated by the United States. It would be incongruous to permit the United States to pursue a CERCLA action against Respondent Group while, at the same time, prohibiting members of that Group from seeking contribution through cross-claims and third-party claims. Such a policy would punish the Respondent Group for accepting responsibility and settling with the Government.

Livingston's argument and Senator Daschle's remarks both fail to recognize the distinction between "actions" and "claims." An "action" may be comprised of numerous "claims," including claims set forth in the initial Complaint, cross-claims, counter-claims and third-party claims. *See, e.g., Ginett v. Computer Task Group, Inc.*, 962 F.2d 1085 (2nd Cir.1992) (noting "that multiple claims and multiple parties may be joined in one 'civil action' "); *Nolan v. Boeing Co.*, 919 F.2d 1058, 1066 (5th Cir.1990), *cert. denied*, 499 U.S. 962, 111 S.Ct. 1587, 113 L.Ed.2d 651 (1991) (recognizing that the term "action" means "the entirety of a civil proceeding, which necessarily includes any third-party claims"). Although the present litigation involves many "claims," they all constitute part of the same "pending judicial action" brought by the United States to recover response costs under CERCLA. As a result, the Court rejects Livingston's argument regarding the inapplicability of § 127(i) to the cross-claims and third-party claims for contribution under CERCLA asserted by the Respondent Group.

For the reasons set forth above, Livingston's supplemental Motion for Summary Judgment (Doc. # 400) is hereby overruled.