In re PETITION OF STRATCAP INVESTMENTS, INC.

[Cite as *In re Petition of Stratcap Investments,
Inc.,* 154 Ohio App.3d 89, 2003-Ohio-4589.]

Court of Appeals of Ohio,
Second District, Clark County.

No. 2003–CA–16.

Decided Aug. 29, 2003.

Elizabeth J. Watters and Gerhardt A. Gosnell II, for appellee, Stratcap Investments, Inc.

Ronald A. Fresco and H. Mark Stichel, for appellant, Liberty Life Assurance Company of Boston.

Joseph M. Juergens, for Thomas P. McEvoy.

BROGAN, Judge.

{¶ 1} Liberty Life Assurance Company of Boston ("Liberty Life") appeals from a judgment of the Clark County Court of Common Pleas, Probate Division, approving a petition for the transfer of periodic payment rights under a structured settlement agreement.

{¶ 2} The record reflects that Thomas P. McEvoy and his former employer, Cooper Energy Services ("Cooper"), entered into the agreement after McEvoy

sustained a work-related injury. In order to compensate McEvoy, Cooper, a self-insured employer under Ohio workers' compensation laws, agreed to provide future periodic payments by purchasing an annuity for him. In particular, the agreement provided for McEvoy to receive $10,000 in 2002, $12,000 in 2004, $15,000 in 2007, $20,000 in 2010, and $25,000 in 2012.

{¶ 3} McEvoy and Cooper submitted the foregoing agreement to the Industrial Commission, which reviewed it and lodged no objection. Cooper then purchased the annuity from Liberty Life. Thereafter, McEvoy decided to transfer his periodic payment rights under the annuity to Stratcap Investments, Inc. ("Stratcap"), in exchange for a reduced, lump-sum payment. Pursuant to the Ohio Structured Settlement Transfer Act ("Transfer Act"), R.C. 2323.58 et seq., Stratcap filed a petition in the probate division, seeking approval of the proposed transfer. After hearing argument, the probate division filed a March 4, 2003 decision and entry, approving the transfer. Liberty Life then filed a timely appeal, advancing four assignments of error.

{¶ 4} In its first assignment of error, Liberty Life argues that the probate division lacked subject matter jurisdiction to entertain Stratcap's petition. In support, Liberty Life cites R.C. 2323.584(A), which under certain circumstances authorizes the probate division of a common pleas court to approve the transfer of "structured settlement payment rights." Liberty Life argues, however, that the settlement agreement between McEvoy and Cooper does not qualify as a "structured settlement" within the meaning of the Transfer Act. Based on its belief that McEvoy's agreement with Cooper does not qualify as a "structured settlement" under the Transfer Act, Liberty Life argues that the probate division lacked jurisdiction over Stratcap's petition. In short, Liberty Life's argument is illustrated by the following syllogism: (1) the Transfer Act gives the probate division subject-matter jurisdiction to review a proposed transfer of "structured settlement payment rights"; (2) the agreement between McEvoy and Cooper does not qualify as a "structured settlement" under the Transfer Act; (3) therefore, the probate division lacked subject-matter jurisdiction over the present action.

{¶ 5} Upon review, we find the foregoing argument to be persuasive. Although Liberty Life did not raise its jurisdictional argument before the probate division, it is well settled that a lack of subject-matter jurisdiction may be raised at any time, even for the first time on appeal. *Jenkins v. Keller* (1966), 6 Ohio St.2d 122, 126, 35 O.O.2d 147, 216 N.E.2d 379. As a court of limited jurisdiction, the probate division may exercise only such jurisdiction as is expressly granted to it by the Ohio Constitution or a statute. *Dumas v. Estate of Dumas* (1994), 68 Ohio St.3d 405, 408, 627 N.E.2d 978. The jurisdiction of the probate division is set forth in R.C. 2101.24(A)(1), which identifies various types of cases over which

it has subject-matter jurisdiction. None of those types of cases involves approving the transfer of rights under any settlement agreement. We note, however, that R.C. 2101.24(A)(2) contains an additional grant of jurisdiction where another section of the Revised Code expressly confers subject-matter jurisdiction on the probate division. The purported basis of the probate division's subject-matter jurisdiction in this case was the Transfer Act. After examining that legislation, however, we conclude that it does not confer subject-matter jurisdiction on the probate division to approve a transfer of the payment rights at issue herein.

{¶ 6} When a "structured settlement agreement" has not been approved by an Ohio court, the Transfer Act provides that "[a] person shall file an application [under the Transfer Act] for the approval in advance of a transfer of structured settlement payment rights in the probate division of the court of common pleas of the county in which the payee, the structured settlement obligor, or the annuity issuer resides." R.C. 2323.584. Notably, the Transfer Act defines the phrase "structured settlement" as "an arrangement for periodic payments of damages for injury to a person that is established by a settlement or a court judgment in resolution of a tort claim." R.C. 2323.58(L). Thus, only when an agreement involving the settlement of a tort claim has not been approved by an Ohio court does R.C. 2323.584 provide for filing an application in the probate division for advance approval of a transfer of payment rights thereunder.

{¶ 7} It is axiomatic that a tort claim is a claim for relief in a tort action. A "tort action" is defined by R.C. 2323.56 as a "civil action for damages for injury to person." Pursuant to Section 35, Article II of the Ohio Constitution, workers' compensation is in lieu of all other rights to compensation, and an employer who complies with the Workers' Compensation Act is not obligated to respond in damages in common law or by statute for a worker's occupational injury. See R.C. 4123.74. Indeed, the Ohio Supreme Court has long recognized that when an injured worker pursues a workers' compensation claim, he relinquishes his common-law tort remedy and accepts lower benefits coupled with a greater assurance of recovery. See, e.g., *Blankenship v. Cincinnati Milacron Chemicals, Inc.* (1982), 69 Ohio St.2d 608, 614, 23 O.O.3d 504, 433 N.E.2d 572. Therefore, we agree with Liberty Life's assertion that a workers' compensation claim is not a form of tort claim to which the Transfer Act applies.

■ {¶ 8} In the present case, the record demonstrates that McEvoy settled a workers' compensation claim with Cooper, his self-insured employer. Given that McEvoy's settlement agreement involved a workers' compensation claim rather than a tort claim, the Transfer Act did not grant the probate division subject-matter jurisdiction to entertain Stratcap's petition for approval of the transfer of payment rights under the agreement.[1] Accordingly, the trial court's judgment

---

1. Although adverse parties may not confer subject-matter jurisdiction on a court by consent, the Ohio Supreme Court has recognized that they may admit the existence of facts which, in

entry approving the transfer must be vacated for lack of subject-matter jurisdiction.

{¶ 9} In opposition to the foregoing conclusion, Stratcap reasons that R.C. 2323.584 gives the probate division jurisdiction over *applications* for the approval of a transfer of structured settlement payment rights. Because it styled its petition as such an application and cited the Transfer Act, Stratcap contends that the probate division had subject-matter jurisdiction to hear and to determine its petition. According to Stratcap, if the settlement agreement at issue involves a workers' compensation claim rather than a tort claim, that fact would go to the *merits* of its petition rather than to the probate division's *jurisdiction* to entertain it.[2]

{¶ 10} Upon review, we find Stratcap's argument to be unpersuasive. The language of R.C. 2323.584 suggests that the settlement of a tort claim was a jurisdictional prerequisite to the probate division's entertaining Stratcap's petition. As noted above, the relevant statutory language provides: "If the structured settlement agreement was not approved by an Ohio court, a person shall file an application * * * for the approval in advance of a transfer of structured settlement payment rights in the probate division of the court of common pleas[.]" The first part of this sentence plainly presupposes the existence of a "structured settlement," which the Transfer Act defines as involving the settlement of a tort claim. See R.C. 2323.58(L). Because the Transfer Act applies

---

turn, demonstrate the existence of subject-matter jurisdiction. *Beatrice Foods Co. v. Porterfield* (1972), 30 Ohio St.2d 50, 54, 59 O.O.2d 76, 282 N.E.2d 355; see, also, *Sturgill v. Sturgill* (1989), 61 Ohio App.3d 94, 572 N.E.2d 178. In the present case, however, the record does not reflect that the parties admitted jurisdictional facts sufficient to establish the subject-matter jurisdiction of the probate division. The record is devoid of any explicit agreement between the parties that McEvoy's settlement with Cooper involved the settlement of a tort claim. The probate division and the parties simply appear to have overlooked the issue. In any event, whether the settlement agreement at issue involved a tort claim or a workers' compensation claim is at least a mixed question of fact and law; and a court is not bound by a stipulation insofar as it relates to a question of law. A court may even disregard stipulations of fact where the stipulated facts are controverted by competent, credible evidence. *Turner v. Turner* (Oct. 18, 1995), Clark App. No. 94–CA–57, 1995 WL 634382; see, also, *Mead's Bakery, Inc. v. C.I.R.* (C.A.5, 1966), 364 F.2d 101, 106 (recognizing that a court is not bound by stipulations of fact that are contrary to facts disclosed by the record). In the present case, the facts disclosed by the record reveal that the settlement agreement involved a workers' compensation claim. As a result, even if it could be said that the parties implicitly stipulated the existence of a tort claim by proceeding without objection in the court below, it would be proper to disregard such a stipulation in the face of the clear evidence that the settlement agreement actually involved a workers' compensation claim.

2. This distinction is significant. If the existence of a tort claim is a "merits" issue rather than a jurisdictional prerequisite, then Liberty Life waived the issue by failing to raise it in the trial court. As noted above, however, if the existence of a tort claim is a jurisdictional prerequisite, then the issue may be raised for the first time on appeal.

only to "structured settlements," and because R.C. 2323.584(A) authorizes the probate division only to approve or disapprove the transfer of payment rights under a "structured settlement," we conclude that the existence of a "structured settlement" (i.e., the settlement of a tort claim) is a jurisdictional requirement. Although Stratcap filed an application that it styled as a petition for the approval of a transfer of "structured settlement payment rights," the underlying settlement agreement actually involved a workers' compensation claim, not a tort claim. Therefore, Stratcap's filing fell outside the scope of the probate division's subject-matter jurisdiction, regardless of how it was styled. Cf. *Zelenak v. Indus. Comm.*, 148 Ohio App.3d 589, 2002-Ohio-3887, 774 N.E.2d 769, ¶ 15 (observing that "how appellants choose to characterize or phrase their claims is not dispositive" with regard to where an action is properly filed).

{¶ 11} Stratcap next argues that R.C. 2323.58(L) does not require a settlement to involve resolution of a tort claim in order for the Transfer Act to apply. As we have recognized, R.C. 2323.58(L) defines a "structured settlement" as "an arrangement for periodic payments of damages for injury to a person that is established by a settlement or a court judgment in resolution of a tort claim." Under this definition, Stratcap reasons that a "structured settlement" can arise from either (1) a settlement or (2) a court judgment in resolution of a tort claim. We reject this reading of the statute. In our view, a more natural reading of the language is that a "structured settlement" is established by (1) a settlement or a court judgment that is (2) in resolution of a tort claim. Under the interpretation advanced by Stratcap, a "structured settlement" would arise from the settlement of any type of claim or from a court judgment resolving only a tort claim. Such a distinction has no readily apparent justification and could not have been intended by the legislature.

{¶ 12} Stratcap next attempts to distinguish a tort "action" from a tort "claim." Although the workers' compensation statutes precluded McEvoy from bringing a tort "action" against Cooper, Stratcap insists that what he settled still may be considered a tort "claim" for purposes of the Transfer Act. We find this argument unpersuasive. The distinction between a claim and an action has nothing to do with the subject matter of the dispute. The existence of a legal "claim" is a precursor to the filing of a judicial "action," which may be composed of many claims. See *United States v. Atlas Lederer Co.* (S.D.Ohio 2000), 97 F.Supp.2d 830, 833 (discussing the distinction between an "action" and a "claim"). As a result of this state's workers' compensation laws, McEvoy possessed only a workers' compensation claim against Cooper, not a tort claim. Therefore, we find no basis for treating the claim as a tort claim under the Transfer Act.

{¶ 13} Finally, we reject Stratcap's arguments that "for all practical purposes" McEvoy's settlement with Cooper involved a tort claim and that "public policy"

supports treating the settlement as one involving a tort claim.[3] Regardless of how many ways Stratcap presents its argument, we remain convinced that a workers' compensation claim is not a tort claim, and that McEvoy settled a workers' compensation claim.

{¶ 14} Based on the reasoning and citation of authority set forth above, we conclude that the trial court lacked subject-matter jurisdiction to file its March 4, 2003 decision and entry approving Stratcap's petition, and we sustain Liberty Life's first assignment of error. In light of our determination that the trial court acted without subject-matter jurisdiction, we have no occasion to address Liberty Life's other three assignments of error, which concern the merits of the trial court's ruling.

{¶ 15} The trial court's March 4, 2003 judgment entry is hereby reversed and vacated for lack of subject-matter jurisdiction.

Judgment reversed
and vacated.

GRADY and FREDERICK N. YOUNG, JJ., concur.

FREDERICK N. YOUNG, Judge, concurring separately.

{¶ 16} The crux of this decision is that the approval by the probate court of this structured settlement transfer is unnecessary. McEvoy is presumably a competent adult. He is also represented by able counsel. He has every right to deal with his own assets as he wishes. I see no legal impediment to his transfer of his right to receive periodic payments in order to obtain the benefit of an immediate lump-sum payment. Furthermore, without the application of the Transfer Act, Liberty Life lacks standing to object to McEvoy's transfer of his assets. McEvoy and Stratcap can proceed with their transaction as they wish.

---

3. Stratcap's "public policy" argument is premised on an assumption that R.C. 2323.58(L) is ambiguous insofar as it refers to the settlement of a "tort claim." In our view, however, the phrase "tort claim" is not ambiguous. We certainly find no ambiguity sufficient to justify interpreting a "tort claim" as encompassing McEvoy's workers' compensation claim.