OPINION
{¶ 1} Donald Leach, as executor of the estate of Mary Louise Leach, appeals from a judgment of the Montgomery County Court of Common Pleas, Probate Division, which found that $154,176.56, which had been listed on an amended inventory of estate assets, was the property of David Leach.
 {¶ 2} The underlying facts as found by the magistrate and revealed by the record are not in dispute. Mary Louise Leach was the owner of a number of Series EE United States Savings Bonds, which were titled in the name of Mary L. Leach or David N. Leach, Mary's only child. Upon Mary's death, those bonds would have passed to David under a right of survivorship due to the joint tenancy.
 {¶ 3} Donald Leach, Mary's brother-in-law, was the attorney-in-fact for Mary. On January 10, 2003, Donald, acting pursuant to the power of attorney, cashed the bonds for the sum of $166,439.42. The proceeds from the bonds were deposited into bank accounts in the names of Donald and/or Mary Leach. Donald asserted that he took these actions at Mary's insistence.
 {¶ 4} Mary died on January 16, 2003. After her death, the funds in the joint bank account passed to Donald as the surviving party. Donald subsequently put the funds in a new account under his own name.
 {¶ 5} On January 31, 2003, Mary's last will and testament was admitted to probate. In accordance with the terms of the will, Donald was appointed as executor of the estate. On April 25, 2003, Donald filed an inventory and appraisal, indicating $444,662.36 in intangible personal property assets and $84,000 in real property. The proceeds of the bonds were not included in the inventory. On October 10, 2003, Donald filed a final accounting, noting $537,753.16 in assets received and an equal amount in assets disbursed. The probate court approved the final accounting on November 13, 2003. The order further stated that Donald would be discharged as executor twelve months from the approval of the final accounting.
 {¶ 6} During this time, the proceeds from the bonds remained in a bank account in Donald's name. From that account, Donald paid $7,800 to David and paid bills for David in the amount of $4,058.33. Donald used $404.53 of the funds for his own benefit. In 2004, Donald deposited $154,176.56 into accounts for the benefit of Mary's estate. Donald indicated that he deposited these funds into the estate because he did not wish to fight with David over these funds.
 {¶ 7} On August 24, 2004, Donald filed an amended inventory with the probate court. The amended inventory included an additional $154,176.56 in "cash assets formally [sic] believed to be joint with survivorship rights" and an additional parcel of real property valued at $3,000. David filed exceptions to the amended inventory. David claimed that Donald had improperly converted the government bonds to his own use, and that the bonds should have passed to him by right of survivorship. David thus argued that the funds should not have been included in the estate.
 {¶ 8} A hearing on the exceptions was held over several days: October 18, 2004; December 16, 2004; and February 15, 2005. Donald was the sole witness examined. Upon review of the testimony and exhibits, the magistrate concluded that Donald had acted in his capacity as an attorney-in-fact when he cashed the government bonds and deposited them into a joint account in his and Mary's names. The court found that Donald "failed to establish any purpose for cashing the savings bonds, just prior to the death of Mrs. Leach, that was for her benefit" and that there was "no direct testimony * * * from a credible witness" that Mary intended for Donald to cash the government bonds and place them in a survivorship account in her and Donald's names. Moreover, the court found no provision in the power of attorney that vested Donald with the authority to make gifts to himself. The court thus concluded that David had established that the $154,176.56 deposited into the estate by Donald was not an asset of the estate but, rather, "an asset whose ownership passed to David Leach as the surviving party of the Series EE U.S. Savings Bonds that were improperly cashed by Donald D. Leach as attorney in fact for Mary L. Leach and placed into a joint survivorship account held between himself and Mary L. Leach."
 {¶ 9} Donald filed objections to the magistrate's ruling. The trial court overruled each of the objections and adopted the magistrate's decision. Donald appeals, raising two assignments of error, which we will address in reverse order.
 {¶ 10} II. "THE PROBATE COURT ERRED IN THAT IT WAS WITHOUT JURISDICTION TO DETERMINE THE TITLE TO PERSONAL PROPERTY WHICH WAS TRANSFERRED TO DONALD LEACH DURING DECEDENT'S LIFETIME IN THE PROCEEDING UPON EXCEPTIONS TO THE INVENTORY."
 {¶ 11} In his second assignment of error, Donald claims that the trial court lacked subject matter jurisdiction to "look back in time" to determine the source of the funds in the joint account in the names of Mary and Donald. He argues that funds transferred to a joint account while a decedent was alive cannot be the subject of an exception to an inventory, as occurred in this case.
 {¶ 12} As a court of limited jurisdiction, the probate division may exercise only such jurisdiction as is expressly granted to it by the Ohio Constitution or a statute. Dumas v.Estate of Dumas (1994), 68 Ohio St.3d 405, 408, 627 N.E.2d 978;In re Petition of Stratcap Invest., Inc., 154 Ohio App.3d 89,91, 2003-Ohio-4589, 796 N.E.2d 73. R.C. 2115.16 provides for the filing of exceptions to an inventory. Moreover, the probate court has jurisdiction over actions involving a power of attorney. R.C.2101.24(B)(1)(b).
 {¶ 13} A hearing on exceptions is a summary proceeding conducted by the probate court to determine whether those charged with the responsibility for the inventory have included in the decedent's estate more or less than such the decedent owned at the time of her death. In re Estate of Gottwald (1956),164 Ohio St. 405, 131 N.E.2d 586, paragraph one of the syllabus; Inre Etzensperber (1984), 9 Ohio St.3d 19, 457 N.E.2d 1161. "Incidental to the hearing of exceptions, the probate court can determine title to personal property included in such inventory. Additionally, under the plenary power conferred upon the probate court in the administration of estates, the court has authority to dispose of any matter properly before the court, unless otherwise provided by statute. R.C. 2101.24(C). There is no statutory provision which limits or denies the court power to hear and determine fully any question raised by exceptions to an inventory of a decedent's estate." In re Estate of Manor (Oct. 17, 1986), Greene App. No. 86-CA-23 (citations omitted).
 {¶ 14} In support of his assertion that the probate court lacked subject matter jurisdiction, Donald relies upon In reEstate of Brunskill (1940), 63 Ohio App. 529, 27 N.E.2d 492. In that case, the decedent had purportedly transferred real and personal property to her daughters prior to her death. After her death, the administrator of her estate included those assets in his inventory. The daughters filed exceptions to the inventory. The probate court concluded that title to the real and personal property was in the estate, and it ordered the daughters to turn the property over to the administrator. On appeal, the Ninth District concluded that the probate court lacked jurisdiction to determine the title to property under the circumstances presented. The court reasoned:
 {¶ 15} "The gifts of personal property were executed gifts, and the transfer of the real estate by quitclaim deed, duly delivered, was such as on its face complied with the statutory requisites necessary to accomplish a transfer of title; and the instruments of title were in the possession of the daughters at the time the administrator was appointed, and were never voluntarily relinquished by them. Under the circumstances here disclosed, the title to the property in question is in the donees of the personal property, and the grantees of the real property, and such property could not be properly inventoried as assets belonging to the estate of the deceased, until the gifts and the transfer were set aside as invalid, and the estate of decedent reinvested with the title to the property." Id. at 531-32.
 {¶ 16} The Ninth District has since declined to followBrunskill. As it's stated in Estate of LaMar v. LaMar (June 24, 1992), Medina App. No. 2070-M, Brunskill "does not discuss the plenary power vested in the probate court by now [sic] R.C.2101.24(C). Later decisions make it clear that the probate court does have jurisdiction to decide questions of title to claimed assets of an estate." Id., citing Cole v. Ottowa Home Savings Assn. (1969), 18 Ohio St.2d 1, 246 N.E.2d 542;Gottwald, supra; In re Estate of Morrison (1953),159 Ohio St. 285, 112 N.E.2d 13; and Tomson v. Bonds (April 15, 1982), Cuyahoga App. No. 43893.
 {¶ 17} In the present case, we agree with the probate court that it had subject matter jurisdiction to resolve the present dispute. As stated supra, the probate court had jurisdiction to determine whether the bond proceeds were property of the estate. Although the court determined that the proceeds were not estate assets, the proceeds from the bonds were in possession of the executor, who had placed them in accounts for the estate, and all of the parties necessary to determine title to the property were participants in the hearing. Under these circumstances, the probate court likewise had ancillary jurisdiction to determine whether the funds were the property of David, the exceptor. SeeIn re Hatch's Estate (1950), 154 Ohio St. 149, 93 N.E.2d 585. In making this determination, the court reviewed whether Donald's conduct as an attorney-in-fact was proper. Pursuant to R.C.2101.24(B)(1)(b), the probate court had the power to resolve whether Donald, as attorney-in-fact, had properly cashed the bonds and placed the proceeds in a joint account in his and Mary's names. Accordingly, under the circumstances presented, the probate court acted within its statutory authority.
 {¶ 18} The second assignment of error is overruled. I. "THE PROBATE COURT ERRED BY FAILING TO CONSIDER THE LIFELONG ESTATE PLANNING OF MARY LEACH WHEN DETERMINING THE SAVINGS BONDS SHOULD PASS DIRECTLY TO DAVID LEACH."
 {¶ 19} In his first assignment of error, Donald claims that the probate court's decision permits the distribution of assets in a manner contrary to Mary's estate planning. He asserts that Mary created an estate plan that limited the distribution of her assets, and that Donald's actions in placing the bond proceeds in a joint account in his and Mary's names were consistent with Mary's wishes and her lifetime estate planning. We note that Donald states that he and the estate "at this point do not disagree with the decision to return the cash received from the savings bonds." Rather, he appears to challenge the consequence of the magistrate's ruling, i.e., that David receive a one-time, lump sum payment.
 {¶ 20} Donald claims that the magistrate's ruling is contrary to the language used in In re Estate of Case (Apr. 3, 1998), Montgomery App. No. 16747, and Testa v. Roberts (1988),44 Ohio App.3d 161, 542 N.E.2d 654. In Case, we addressed whether funds placed in a survivorship account by the decedent's niece, who had a power of attorney during the decedent's lifetime, were property of the estate rather than of the niece. Initially, we acknowledged that "the opening of a joint and survivorship account in the absence of fraud, duress, undue influence or lack of capacity on the part of the decedent is conclusive evidence of his or her intention to transfer to the surviving party or parties a survivorship interest in the balance remaining in the account at his or her death." Id., quoting Wright v. Bloom
(1994), 69 Ohio St.3d 596, 635 N.E.2d 31, paragraph two of the syllabus. However, we further stated:
 {¶ 21} "[W]here additional funds were transferred into the accounts under a power of attorney, we hold that the Wright
presumption applies only to those funds that Case [the decedent] knew to be in the survivorship accounts. The presumption does not apply to additional funds that [the niece], as an attorney-in-fact who was also the beneficiary of the survivorship accounts, transferred into the survivorship accounts, unless the propriety of such transfers can withstand exacting scrutiny. * * * [I]n cases where a fiduciary relationship exists between the creator of a joint and survivorship account and a survivor beneficiary, there is suspicion that the transaction resulted from undue influence, and a presumption of undue influence arises. Once this presumption arises, the burden of going forward with evidence shifts to the beneficiary to show that his conduct has been free of undue influence or fraud." Id. (citations omitted).
 {¶ 22} Upon review of the evidence, we affirmed the probate court's ruling that Case's niece had rebutted the presumption of undue influence with regard to certain funds but not as to others.
 {¶ 23} We also rejected the niece's assertion that she was empowered, as an attorney-in-fact, to make gifts to herself. We stated that "[w]here the state legislature has not clarified the requirements of a power of attorney regarding gift giving authority, courts must determine whether to interpret the power of attorney narrowly, according to the powers conferred on its face, or to consider extrinsic evidence of the donor's intent." We found Testa, which considered extrinsic evidence of the decedent's intent, to be instructive as to whether an attorney-in-fact had an implied authority to give gifts to himself. In Testa, the court invalidated gifts made to the attorney-in-fact and other family members under the general power of attorney when the gifts contravened the decedent's wishes as expressed in her will, the gifts were inconsistent with the lifetime estate planning strategy, and the decedent was incompetent when the power of attorney was executed. Applying the factors employed in Testa, we noted that allowing the niece to retain all of the assets in the joint accounts would have been inconsistent with the testamentary intent expressed in Case's will.
 {¶ 24} Donald asserts that, unlike Case and Testa, the magistrate's conclusions are inconsistent with Mary's estate planning. He points to the fact that Mary's will established a testamentary trust for David's benefit from which David was to receive $1,000 per month. Donald was designated as the trustee of that trust. (According to the record, Donald declined his nomination as trustee and, in accordance with the terms of Mary's will, Joseph Moore was appointed.) Donald also points to his deposition testimony, in which he stated that Mary intended for Donald to have the bond proceeds and to use them for David's benefit. David responds, in part, that Donald's evidence of Mary's estate planning is not properly a part of the record. He notes that neither Mary's will nor Donald's deposition was entered into evidence at the hearing on his exceptions to the inventory.
 {¶ 25} Even if we were to consider Donald's evidence, we see no error in the trial court's determination. Although Donald suggests that placing the bond proceeds in a joint account in his and Mary's names was pursuant to Mary's expressed wishes and lifetime estate planning, the result of that action was that Donald, upon her death, became the sole owner of the funds. Donald did not hold those funds in trust for David, nor was he under any legal (as opposed to moral) obligation to use those funds for David's benefit. Moreover, the will indicates that David and his son, Ian, were the sole beneficiaries of Mary's estate (other than a $5,000 bequest to Susan Cox). Thus, the probate court could have reasonably concluded that Mary intended for David to receive the proceeds of the sale of the bonds and not Donald. In the absence of any provision that the bond proceeds were to be held by Donald in trust for David, Donald's evidence does not support a conclusion that the magistrate's ruling was contrary to Mary's estate planning. The probate court acted reasonably when it concluded that Donald exceeded his authority under the power of attorney when he placed the bond proceeds in a survivorship account in his and Mary's names, thus creating a gift to himself.
 {¶ 26} The first assignment of error is overruled.
 {¶ 27} The judgment of the probate court will be affirmed.
Grady, P.J. and Brogan, J., concur.